insisted that, by recurring to the act in Ir. 202, § 5, it will evidently appear that the act never contemplated giving the courts power where the deceased had his place of residence out of the State, and died there. Whenever an act is introductive of a new law, it cannot be extended in any other manner, nor to any other persons. The subject is not within the jurisdiction of the Court of Equity. Mitford, 11.
The Court of Chancery, in England, uniformly has had a disposition to extend its jurisdiction. It has done so, as it respects Ireland and other countries over which it possessed control; but that is no reason why we should put such a construction on the powers of our courts.
Conformably to this act, the Court has no power to enforce a decree here, as it has in England. This act gives no power to make such a division of the property as is prayed for. To enforce its judgment, this court has a common-law process given it. § 24. It is true that the plea does not show what court has jurisdiction, but this cannot be taken advantage of on general demurrer, which is the case here. Mitf. 183.
The petition shows that the defendants gave security in the State of Virginia. It is there the plaintiffs ought to seek redress.
Whoever pleads to the jurisdiction of a court must show what court has *Page 104 
jurisdiction. It is matter of substance, and not of form. The plea is therefore bad in point of substance. 1 Cun. ed. Bac. Ab. 34. The demand is personal and may be sued wherever found.
The Act of Assembly gives power to the superior or county courts to determine claims for legacies, portions, and distributive shares, upon petition, prescribing equity rules. § 23. Whensoever a power is given, all that is necessary to carry it into effect is incidentally given, such as process.
If the plaintiffs and defendants live in this State, and sue in Virginia, a recovery cannot be had. It is so in equity here. 1787, c. 22, 6th proviso to sect. 1. The Act of 1801, c. 6, § 2, has furnished only one exception to this rule. So that if we cannot obtain a relief here, we cannot anywhere.
Mr. Kennedy has stated that our claim is for a distributive share. This is a mistake. There is a will, and we have brought suit for an account and legacy.
The plea is sufficient, without averring where, or in what court, the plaintiffs might sue. The preamble, says Lord Coke, is the key to the statute. 4 Cun. ed. Bac. Ab. 645, pl. 11. It is "that the greater part of estates in this province belonging to orphans are of so inconsiderable value that an application to the courts of chancery, in many instances, will occasion an expense which the profits of them are not sufficient to defray; and it having been found by experience that the courts of each respective county, exercising the power of regulating the education of orphans, and the management of their estates, have proved of singular service to them." It appears by the plaintiffs' own showing, that their remedy was in the General Court in Virginia. There it was that security was given for the correct administration of the estate; and to the same court they must apply for any injury that has been sustained in that administration.
If the executrix had settled her administration account in Virginia, she and her husband might *Page 105 
be charged here, but not until a settlement. Nearly twenty years have elapsed since the probate of the will in Virginia; surely this court will not entertain jurisdiction at this distance of time.
The petition was filed in the County Court; it calls on the defendant to account for the whole personal estate. No person but the Court where letters testamentary were granted could call for such a general account.
We have accounted for our administration at Richmond, where we obtained the letters testamentary; it is there we ought to have accounted. The petition calls upon us to distribute according to Act of Assembly; now it is manifest this cannot be done, for in this respect the lex domicilii must prevail. In England, it was incumbent on the ordinary who granted letters to call for an account, God. Orp. Leg. 150. and this furnishes the rule in this case. The court at Richmond ought to call for an account. No other court can do it. Suppose this case: a man in Virginia enters into a recognizance; it will not be contended that any court of this State can judge whether it has been forfeited or not. So it is with respect to this administration bond. If this court will exercise jurisdiction, having no right to do so, it will not be a bar in that State. The twenty-sixth and last section of the act expressly says that the jurisdiction of equity shall not be taken away, but shall remain as before.
This shows that it is a common-law proceeding, and not to be considered with those of the Court of Equity. And no other remedy can be resorted to than that pointed out by the act.
This is not a suit for a special legacy or debt, but a suit to compel the defendants to account, when no other court than that where the letters were granted can do that.
This would be conformable to the practice in the ecclesiastical courts.
The case in 3 Cranch, 319, proves, inter alia, that an executor cannot sue out of the State where letters were obtained, upon the authority of those letters. Upon reciprocal principles, surely suits ought not to be sustained against those characters in other States. It would be unjust not to suffer them to sue, and render them liable to be sued.
The reason given by Chief-Justice Marshall, in 3 Cranch, was, that a court of one State could not give authority by its letters beyond its limits. In this case, the defendant executrix never agreed to account beyond the limits of the *Page 106 
State in which she received the authority. He concluded by admitting that if the demand were specific, and not to account, the suit might be maintained.
The ideas to be collected from the excellent dissertation of Huberus are fully sufficient for the determination of this question. The note in 3 Dall. 370, is of great and essential importance to the profession. And if any thing were wanting to complete a view of the law respecting foreign administrations, it may be found in the judicious remarks of Mr. Haywood, in Hay. 355, n.
Huberus, as translated, lays down the following positions: 1st. "The laws of every empire have force within the limits of that government, and are obligatory upon all who are within its bounds. 2d. All persons within the limits of a government are considered as subjects, whether their residence is permanent or temporary. 3d. By the courtesy of nations, whatever laws are carried into execution within the limits of any government are considered as having the same effect everywhere, so far as they do not occasion a prejudice to the rights of the other government or its citizens." After illustrating these positions he observes, "personal rights obtained or communicated by the laws of any particular place are of a nature which accompany the person wherever he goes, with this effect, that in all places he either enjoys the immunities or exemptions, or is subject to the disabilities imposed by the law of the country where they at any time happen to be on characters of that description." As a consequence of the second position he observes, that "an act valid, or void, in its beginning, or where it first takes place, must be the same elsewhere." And after putting foreign contracts, wills, and intestacies, respecting personal property, on the same footing, that they should be governed by the law of the place where the contract, will, or intestacy took place, he proceeds, "if a debtor resident in Friesland executed an instrument in Holland before a magistrate, which may there entitle him to an execution, but not by common right, no execution can issue here, but the merits of the original demand must be examined. The reason is, that acts of limitation, and modes of execution, do not belong tothe essence of the contract, but to the time and manner of bringing suits, which is a distinct thing," and that "in the execution of a sentence given abroad, the law of the place in which the execution is asked is to govern, not the law of the place where the judgment was given."
From these positions and illustrations, the case before the *Page 107 
Court is evident. The case stands thus: the deceased, first husband of one of the defendants, resided in Virginia when the property in contest was there situated; he made a will and died there. The widow, who was appointed executrix, gave bond and security, according to the law of that government, for the faithful administration of the estate. She afterwards moved to this government, taking the personal property with her, and now a person claiming under the will sues her for an account, and to recover such part of the estate as the will had provided.
The positions are so clear, and illustrations so evidently strong, that it were unnecessary to consider minutely the arguments of counsel on either side.
The will was valid in Virginia, where it was made; under the third rule, it is so here, with all its incidents, except that of authorizing the executrix to bring suit in that character, 3 Cranch, 319, and to dispose of property situated in this State at the decease of the testator. The last part of the exception is forcibly elucidated by Mr. Haywood in a note to the first volume of his Reports, 355. The first and second rules enable the plaintiffs to bring suit here, for the execution of a will, contract, or distribution of an intestate's property, the original cause of action having arisen abroad. The taking an account of the estate is necessarily incident to the right of having redress here; one would be perfectly illusory without the other. This case is as strong for the jurisdiction of the Court, as it is possible for a case similarly situated to be. The demand is not only personal, as assumed in the position of Huberus, which would give the Court jurisdiction, but in rem. The petition charges that the property is removed into this State. If we" exclude the plaintiffs from our courts, they have no means of redress left them. In Virginia they are remediless; neither the property of the deceased, nor person of the executrix and husband being within the jurisdiction of that State. It is no answer to say that the parties interested under the will may look to the securities upon the administration bond. The plaintiffs are entitled to an execution of the will specifically, which that method could not afford, and it would be derogatory from every idea of justice to exempt the citizens of this State from their contracts abroad, by throwing their burdens on the shoulders of innocent men, their securities there. Independent of these considerations, the contract to account, entered into by the executrix, was with the persons interested under the will. This being the primary contract, the plaintiffs are as much entitled to ask for an execution of it, *Page 108 
or compensation against the representatives of the personal estate alone, as if there had not been any security given. The plea is untenable in point of substance; it is therefore useless to consider whether it ought to have shown what court had jurisdiction. It has failed in showing a want of jurisdiction in this court. As to lexloci, see 1 Bos. Pull. 133, 139; 3 Ves. Jr. 446; 4 Ves. Jr. 577; 1 Bl. 258; 1 H. B. 665, 690; 4 Term Rep. 184; 3 Dall. 373; Kame's P. E. 567, 568; 2 Ver. 540.
CAMPBELL, J., thought the plaintiffs' remedy was in Virginia and not here; the plea, therefore, ought to be sustained.
POWEL, J., was related to one of the parties, and therefore did not sit.