Morton J.
[After stating some of the facts.] By the .«tatute of distributions of this State these heirs, standing in the *128 same degree of relationship to the intestate, inherited his estate ™ equal proportions. But by the statute of New York, which carries the doctrine of representation farther than the law of this State, or indeed than the civil or common law, these heirs inherited per stirpes and not per capita. So that the estate in New York descended, one half to the wife of the plaintiff, and the other half to the defendant and his two brothers ; being one sixth instead of one quarter to each.
Of the provisions and even existence of this statute, all the heirs were entirely ignorant during the whole of the transactions stated in the case. The plaintiff having discovered the mistake, now seeks by this action to reclaim of the defendant one third of the amount received by him on account of the sale of the New York lands, with interest from the time of its receipt. And the question now submitted to our decision is, whether he is entitled to a repetition of the whole or any par of this amount.
Had the parties been informed of their respective rights under the laws of New York, it cannot be doubted that the plaintiff would have retained one moiety of the land in that State, or would have received to himself one half of the consideration for which it was sold. The distribution of the avails of the sale was made by the heirs upon the confident though mistaken supposition, that they were equally entitled to them. They acted in good faith, upon a full conviction that they were equal owners of the estate. It turned out, however, to the surprise of all of them, that they owned the estate in very unequal proportions, and that the defendant and his brothers had received not only the price of their own estate, but also the price of a part of the plaintiff’s estate.
Equity would therefore seem to require, that the defendant should restore to the plaintiff the amount received for the plaintiff’s estate. It was received by mistake, and but for the mistake would not have come to the defendant’s hands. If the whole estate had been owned by the plaintiff, and the defendant, having no interest in it, had received the whole consideration, the equitable right of repetition would have been no stronger ; it might have been more manifest.
The suggestion that the provisions of the New York statute *129 are in themselves inequitable, is no answer to this view of the case. Whether the law of descent in that State is more or less reasonable and just than ours, it is neither our province nor desire to inquire. All statutes regulating the descent and distributions of intestate estate may be considered as positive, and in some degree, arbitrary rules. And when a person, by inheritance or purchase, becomes lawfully seised of any estate without fraud or fault on his part, it would be as inconsistent with sound ethics, as with sound law, to devest him of it because the rule of law by which he held it was deemed unreasonable. And if, by accident or mistake, another should get possession, it is not easy to see upon what principle he would be justified in retaining it.
In the case at bar, the division of the consideration money was made by the agreement of all the parties interested. The defendant received the money with the plaintiff’s consent. But it was an implied, rather than express agreement.
The defendant also received the money under a claim of right. The defendant believed himself to be legally and equitably entitled to one quarter part of the proceeds of the sale. And under this belief he claimed it as being rightfully due to him, and the plaintiff, under the influence of the same belief, assented to the justice of the claim, and agreed to the equal distribution which was made.
It was not however paid to the defendant by way of compromise. No controversy existed between the parties. There was not even a difference of opinion between them in relation to their respective purparties in the estate before it was sold, or to the apportionment of the avails after the sale. There was therefore no room for concession on the one side or the other and nothing between them which could be the subject of compromise.
Nor do the facts furnish any ground to presume that the plaintiff intended to grant any thing to the defendant, or to yield any of his legal rights. Nemo presumitur donare. And we have no reason to believe that the plaintiff intended to give away any part of his own property, or bis wife’s inheritance.
The mistake in the distribution of the consideration money for which the land was sold, arose from the mutual ignorance *130 of the law of descents in New York. Can this mistake be cor-reeled and the plaintiff be restored to the rights which he had under this statute ?
It is in the first place objected, that the plaintiff’s ignorance was owing to his own negligence ; that he shall not be allowed to take advantage of his own laches ; that what a man may learn with proper diligence, he shall be presumed to know ; and that against mistakes arising from negligence, even a court of equity will not relieve.
In all civil and criminal proceedings every man is presumed to know the law of the land, and whenever it is a man’s duty to acquaint himself with facts, he shall be presumed to know them. But this doctrine does not apply to the present case. It was not the duty of the plaintiff to know the laws of New York, nor does ignorance of them imply negligence. Knowledge cannot be imputed to the plaintiff, and it is expressly agreed that he, as well as the defendant, was entirely ignorant of the statute of New York. Besides, it was as much the duty of the defendant as of the plaintiff, to be acquainted with the laws of New York. And if either is guilty of negligence, both are, in this respect, in pari delicto.
The objection that the title to real estate cannot be tried in this form of action,[1] cannot avail the defendant ; because it seems to us very clear, that no title is or can be drawn in ques tion, in the present case
The principal objection to the plaintiff’s recovery, and the one most relied upon by the defendant’s counsel, is, that the payment to the defendant was made through misapprehension of the law, and therefore that the money cannot be reclaimed.
It is alleged, that to allow the plaintiff to recover in the present action, would be to disregard the common presumption of a knowledge of the law, and to violate the wholesome and necessary maxim Ignorantia juris quod quisque tenetur scire, neminem excusat. This objection has been strongly urged by the defendant’s counsel, and learnedly and elaborately discussed by the counsel on both sides. It is believed that all the authorities applicable on the point, from the civil as well as the common law, have been brought before the Court.
*131 Whether money paid through ignorance of the law can be recovered back, is a question much vexed and involved in no inconsiderable perplexity.[2] We do not court the investigation of it, and before attempting its solution, it may be well to ascertain, whether it is necessary to the decision of the case before us.
That a mistake in fact, ,is a ground of repetition, is too dea1" and too well settled to require argument or authority in its support.[3]
The misapprehension or ignorance of the parties to this suit, related to a statute of the State of New York. Is this, in the present question, to be considered fact or law ?
The existence of any foreign law must be proved by evidence showing what it is. And there is no legal presumption that the law of a foreign state is the same as it is here. 2 Stark. Ev. (Metcalf’s ed.) 568 Male v. Roberts, 3 Esp. Rep. 163. If a foreign law is unwritten, it may be proved by parol evidence ; but if written, it must be proved by documentary evidence. Kenny v. Clarkson, 1 Johns. R. 385 ; Frith v. Sprague, 14 Mass. R. 455 ; Consequa v. Willings, 1 Peters’s Circ. C. R. 229. The laws of other States in the Union are in these respects foreign laws. Raynham v. Canton, 3 Pick. 293.[1]
The courts of this State are not presumed to know the laws of other States or foreign nations, nor can they take judicial cognizance of them, till they are legally proved before them. *132 But when established by legal proof, they are to be construed by *^e same rules and to have the same effect upon all subjects coming within their operation, as the laws of this State.
That the lex loci rei sites, must govern the descent of real estate, is a principle of our law, with which eveiy one is presumed to be acquainted. But what the lex loci is, the Court can only learn from proof adduced before them. The part'es knew, in fact, that the intestate died seised of estate situated in the State of New York. They must be presumed to know that the distribution of that estate must be governed by the laws of New York.[2] But are they bound, on their peril, to know what the provisions of these laws are ? If the judicial tribunals are not presumed to know, why should private citizens be ? If they are to be made known to the court by proof, like other facts, why should not ignorance of them by private individuals have the same effect upon their acts as ignorance of other facts ? Juris ignorantia est, cum jus nostrum ignoramus, and does not extend to foreign laws or the statutes of othei states.
We are of opinion, that in relation to the question now before us, the statute of New York is to be considered as a fact, the ignorance of which may be ground of repetition.[3] And whether ignorantia legis furnishes a similar ground of repetí- * tion, either by the civil law, the law of England, or the law of this Commonwealth, it is not necessary for us to determine The examination, comparison and reconciliation of all the con flicting dicta and authorities on this much discussed question, is a labor which we have neither leisure nor inclination to undertake.
In the view which we have taken of this case, it appears tha the defendant received a part of the consideration for which the plaintiff’s estate was sold ; that it was received by mistake ; and that this mistake was in a matter of fact. He therefore has in his hands money which ex aequo et bono he is bound to repay, and there is no principle of law which interposes to prevent the recovery of it out of his hands.
*133 The action for money had and received, which for its equitable properties is ever viewed with favor, is the proper remedy for its repetition. The mode in which the payment was originally secured by bond and mortgage, forms no objection to the recovery, inasmuch as the money was in fact paid before the action was commenced. The plaintiff’s remedy will extend to all the money actually received by the defendant beyond his legal proportion of the estate. Whether it shall extend further, is a question involved in some difficulty.
The estate in New York, at the decease of the intestate, was under mortgage. This mortgage was satisfied from the estate itself, and the amount thus paid deducted from the consideration money. The plaintiff now contends that this incumbrance ought to have been removed by a payment from the personal estate, or if that was insufficient, from the real estate in this Commonwealth.
In the consideration of this question, it must not be forgotten that the plaintiff can recover only what in equity and good conscience is due to him. What descended to the heirs in New York ? The estate there, not free from all incumbrances, but with this mortgage upon it. Did equity require that the defendant and his brothers should advance three fourths of the money to pay off this mortgage, that the plaintiff might have one half the estate increased in value by this payment ?
The mortgagee relied entirely upon his lien on the estate , otherwise he would have demanded payment of the administratrix, and sought a remedy against her upon the personal security of the intestate. This he omitted to do until the claim was barred by the statute of 1791, c. 28. The only sure remedy then remaining was upon his mortgage. This remedy he resorted to, and obtained from the land mortgaged satisfaction of his debt, by a sale of part of it according to the laws of New York.
It is true that before this claim against the estate was barred by the statute of limitations, the heirs agreed with the administratrix, that the debt should be paid out of the proceeds of a sale of certain corporate stock- But the stock was not sold so as to make the payment, and after the demand was barred, the heirs made an agreement with the purchaser of their estate in *134 New York, that he should retain enough of the consideration which was then due to them, to remove this incumbrance, deducting an equal amount from each bond. After the deduction of this amount from the bonds, the balances were paid to the obligees, and thus the bonds were satisfied and discharged. The effect of this arrangement by the heirs was, to leave the estate in the hands of the purchaser in the same situation it would have been, had it been sold subject to this incumbrance.
It must be presumed that the heirs stipulated to remove the incumbrance or to furnish the purchaser with the means of doing it. If this was not the case, they voluntarily agreed to relinquish a part of the purchase money. In this event it was equivalent to a reduction of the price of the estate, and the plaintiff can have no claim to any more than one half of the price which was finally agreed upon and actually paid.
If the heirs agreed to pay off this mortgage, it was a part oi the agreement that it should be paid out of a particular fund. As this agreement was made by the plaintiff under the mistaken supposition that he owned but a quarter, when in fact he owned half of it, he claims to be relieved from its operation. If the agreement is invalid in' part, it must be so in the whole. The plaintiff cannot be released from it and the defendant be bound by it. If the plaintiff, with a knowledge of his rights, would not have agreed to pay out of this fund ; so the other heirs, with the same knowledge, would not have agreed to pay at all. They would have relied upon their statute bar, and left the mortgagee to his remedy on the mortgaged estate and their grantee to his remedy against his grantors or in resisting payment of his bonds.
Although this agreement was founded in misapprehension, yet as it was made in good faith and has been executed, as the parties cannot be restored to the situation they were in when it was made, and as the effect of annulling it as to one would be manifest injustice to the other, we can see no good reason why both should not be bound by it.
Besides, we cannot perceive that this arrangement by the heirs had any effect upon the rights of the mortgagee, or in fact upon his proceedings to recover his debt. The purchaser having failed to pay off the mortgage, the mortgagee was left to his *135 only remedy, and doubtless pursued it in the same manner he would have done had the heirs made no provision for extinguishing their debt.
If the heirs had received of their grantee the whole consideration, and afterwards he had been compelled to remove the incumbrance, would not the heirs have been bound to remunerate him ? If at the sale they agreed to remove the incumbrance, justice would have required them so to do, and in the same equal proportions in which they had received the consideration, because if such agreement was made, it was upon the mutual belief that they were equally interested in the estate, and it would be unequal and unjust to relieve them from it.
But it is argued for the plaintiff, that he ought to recover for this part of his claim, because the estate in this Commonwealth was liable for the payment of this debt, and that the neglect to pay it was a breach of duty in the administratrix for which she would be answerable to the heirs in the same proportion in which they owned the estate. For the reasons before given, we are not satisfied that the plaintiff ought to prevail on this point, even if this position is tenable. But we think it cannot be maintained as applicable to this case.
The estate here was unquestionably liable for the payment of this debt, had it been prosecuted against the administratrix here before it was barred by the statute. But we do not think that it was the duty of the administratrix, under the circumstances of this case, to go into New York to redeem the estate there, nor that her omission to do it would render her liable for a devastavit.
By the common law the heir is entitled to the aid of the personal property of the mortgager in paying off mortgages ; but if the heir, without making application for aid in redeeming, disposes of the mortgaged estate, he cannot afterwards come upon the personal estate for assistance. Bac. Abr. Mortgage, E. And no authority was cited, or has been found, which requires the administrator in England to redeem mortgaged estates in foreign countries. But on the contrary, it is very clear that such administrator would have no power to do any act, as such, out of the kingdom.
So an executor or administrator appointed in this State has *136 no authority beyond its limits. He would have no power to make a tender in any other State, nor could he resort to any legal process to compel the mortgagee to accept a satisfaction of the debt or discharge the mortgage. Goodwin v. Jones, 3 Mass. R. 514 ; Stevens v. Gaylord, 11 Mass. R. 256 ; Langdon v. Potter, ibid. 313 ; Cutter v. Davenport, 1 Pick. 81; Fenwick v. Sears’s Adm. 1 Cranch, 259 ; Dixon’s Ex. v. Ramsay's Ex. 3 Cranch, 319.[1] The law imputes negligence to no man for not doing that which he has no legal power to do. It is true, that if the mortgagee had chosen, he might not only have compelled the administratrix to pay out of the estate here, but he might voluntarily have accepted payment of her, and given her a valid discharge. But he could not have been compelled to do either. He had the power at his own election, either to commence process upon the mortgage itself, or to take out administration in the State where the mortgaged land was, and in the one way or the other to obtain satisfaction of the debt from the estate itself. As the administratrix had not the power to prevent him from adopting either of these courses, so her omission to do it, or to attempt to do it, did not amount to waste.
The mortgage was made by the intestate to secure the payment of a note given by him for fifteen thousand dollars; about one third of which was received by him just before his death, and the residue of which was contracted to be paid by the mortgagee in a limited time. The mortgagee had a right to execute the contract by paying to the administratrix the whole balance of the $ 15,000 and increasing the lien to that amount on the estate mortgaged. But by agreement between the mortgagee and the administratrix, only a part of this sum was paid by the former to the latter, so that the incumbrance was fixed at $7500. The plaintiff claims to recover of the defendant one twelfth part of this sum received by the administratrix, as distinguishable from the amount paid to the intestate in his lifetime.
This sum was paid by the administratrix in pursuance of the original agreement, was secured by the mortgage given by the *137 intestate in his lifetime, the mortgagee’s only remedy was against the estate, and his action against the administratrix was as much barred by the statute in relation to this sum as the other. It was always treated as one debt by the administratrix and the heirs. All the agreements between the heirs for the extinguishment of the mortgage, related as much to this part of the demand as the other. In short, no distinction was ever made between the different sums which constituted this debt.
And it was all equally an incumbrance on the New York estate. For the reasons before given, we are of opinion that there is no ground for distinguishing between the sum received by the administratrix and that received by the intestate, and that the plaintiff is not entitled to recover for any portion of the amount secured by the mortgage.
Upon a view of the whole case, it is the opinion of the Court, that the plaintiff recover one third of the whole amount received by the defendant on account of the sale of lands m New York, with interest from the service of the writ

 See Miller v. Miller, 7 Pick. (2d ed.) 136, note 1

 See Claflin v. Godfrey, 21 Pick. 14 ; Elliot v. Swartwout, 10 Peters, 137, Mowatt v. Wright, 1 Wendell, 355; Dickens v. Jones, 6 Yerger, 483 ; Lee v. Smart, 2 Leigh, 76; Hubbard v. Martin, 8 Yerger, 498; Parsons v. Gloucester Bank, 10 Pick. 533; Clark v. Dutchcr, 9 Cowen, 674; Hill v. Green, 4 Pick. 114 ; Jones v. Watkins, 1 Stewart, (Alab.) 81; East Ind. Co. v. Tritton, 3 Barn. & Cressw. 280; Goodman v. Sayers, 2 Jacob & Walker, 263; Milnes v. Duncan, 6 Barn. & Cressw. 671; Lawrence v. Beaubien, 2 Bailey, 623; Champlin v. Laytin, 18 Wendell, 407; S. C. 1 Edwards’s Ch. R. 467 ; S. C. 6 Paige, 189; Underwood v. Brockman, 4 Dana, 309; Lammot v. Bowly, 6 Harr. & Johns. 500; 1 Story’s Comm. Eq. 121,122, note. See also a full discussion of this subject in 23d Vol. Amer. Jurist, pp. 146 to 166, 371 to 412; Norton v. Marden, 15 Maine R. (3 Shepley,) 45.

 See Chitty on Contr. (4th Am. ed.) 491, note 2; 1 Metcalf & Perkins’s Dig. tit. Assumpsit, VI. (b.) pp. 286,287; 1 Story’s Comm. Eq. 155, et seq.; Hill v. Green, 4 Pick. (2d ed.) 116, note 1 ; Claflin v. Godfrey, 21 Pick. 9.

 See 3 Pick (2d ed.) 296, note 3, and cases there cited; Story’s Conflic of Laws, 530; Revised Stat. c. 94, § 60, 61.

 See Revised Stat. c. 71, § 34 ; c. 72, § 17; Dawes v. Head, 3 Pick. (2ded.) 144, note 1.

 See Norton v. Marden, 15 Maine R. (3 Shepley,) 46.

 See Commonwealth v. Griffith, 2 Pick. 11 ; Stearns v. Burnham, 5 Green-leaf, 261; Thompson v. Wilson, 2 N. Hamp. R. 291.