PATTERSON v. PAGAN.

1. A party brought in as defendant because the real claimant of the property in dispute, may put in issue the plaintiffs' capacity to sue.
2. Plaintiffs' incapacity to sue, not clearly appearing from the statements of the complaint, this defense could not be taken by demurrer; it was, therefore, properly made by answer and proof of the facts.
3. The proper probate of a will in another State, with letters testamentary there duly issued to the executors, and an exemplification of these proceedings marked by a probate judge in this State, "filed and admitted to probate," do not authorize such executors to bring action in this State, no letters testamentary being here issued.

---

Before WITHERSPOON, J., Fairfield, September, 1882.

The opinion states the case.

*Mr. Jno. S. Reynolds,* for appellant.

*Mr. T. C. Gaston,* contra.

March 6th, 1883. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action by the plaintiffs, as executors of the will of Robert Patterson, deceased, late of Pennsylvania, originally brought against John D. McCarley, sheriff of Fairfield county, to recover the proceeds arising from the sale of certain crops seized and sold by him as sheriff under a warrant to enforce an agreement for rent of land executed by James Pagan to Robert Patterson, deceased. More than "thirty days" had elapsed between the said sale and the commencement of this action. By an order of June, 1882, James Pagan was interpleaded as a defendant, and answered.

The trial was had at the September term, 1882. The complaint alleged that "Robert Patterson, then a resident of the State of Pennsylvania, departed this life, leaving in full force his last will and testament, wherein the said Robert E. Patterson, W. Heyward Drayton and Henry P. Smith, the plaintiffs, were appointed his executors, and that said will having been admitted to probate in the State of Pennsylvania, was duly admitted to probate and filed in the office of Probate judge of Fairfield county, in the State of South Carolina; and that the said executors have heretofore qualified and entered upon the discharge of their duties." The defendant answered, denying that the plaintiffs had legal capacity as executors to sue in this State.

It appeared by an exemplification of the proceedings that the will of Robert Patterson was duly admitted to probate in the proper office of the city and county of Philadelphia, in the State of Pennsylvania, and that letters testamentary thereon had been granted to the plaintiffs, as executors, on August 12th, 1881. A full copy of the proceedings in Philadelphia in probating the will had been recorded in the office of judge of Probate for Fairfield county, South Carolina, endorsed, "Filed and admitted to probate December 29th, 1881," but no further proceedings were taken. The persons named as executors never

qualified as such or received letters testamentary in this State. The sheriff testified that James Pagan had never filed an affidavit denying that the amount claimed was due on the lien for rent mentioned in the complaint, but before the sale of the cotton he had served written notice claiming that the cotton was his property, not subject to Patterson's lien.

The plaintiffs here rested and the defendant moved for a nonsuit on the ground that the plaintiffs had not established their legal capacity to sue. The motion was refused, a verdict rendered for the plaintiffs, and the defendant appeals to this court upon the following grounds: First. "For that his Honor held that upon proving the testator's will in the office of the judge of Probate, the plaintiffs become legally capable of suing in this State. Second. For that his Honor held that under section 1875 of the general statutes, the plaintiffs, as executors, are authorized to prosecute this action to judgment. Third. For that his Honor did not hold that to enable the plaintiffs, as executors, to prosecute this action, they must have qualified in this State according to the form prescribed in the general statutes. Fourth. For that his Honor did not hold, in order to enable the plaintiffs, as executors, to prosecute this action to judgment, they must have received letters testamentary from the Court of Probate in this State. Fifth. For that his Honor did not hold that the plaintiffs have not legal capacity to sue, and dismiss the complaint.

The plaintiffs contend that the defendant Pagan has no right to make the objection of want of capacity on their part to sue, for the reason that no claim was made against him—that he was not originally sued, but the sheriff for money in hands, and Pagan claiming the same money was brought in by interpleader and thereby merely allowed to support his own claim to the money, but not to dispute others. We find Pagan on the record as the defendant, and we know of no rule of law which limits his rights as defendant on account of the manner in which he was brought in. No authority was cited to sustain the view suggested. It does not appear at whose instance he was made a defendant, but we suppose that he was substituted for the party originally sued, under the authority of the last paragraph of

section 145 of the code, which provides, that at the instance of a defendant against whom a claim is made for the property in controversy, by a person not a party to the action, the "court may grant an order to substitute such person in his place," &c.

The plaintiffs also claim that Pagan could only avail himself by demurrer of the defense of want of capacity in the plaintiffs to sue. The defendant is authorized to demur when the facts which constitute the defense appear upon the face of the complaint; but if it does not show the facts upon its face, the objection can only be made by answer and proof of the facts. *Code*, § 170; 2 *Wait Pr.* 448. In this case, the fact upon which the defense rested did not clearly appear upon the face of the complaint, which stated that, "the said will, having been proved and admitted to probate in the State of Pennsylvania, was duly admitted to probate, and filed in the office of the Probate judge in Fairfield county, in the State of South Carolina; and that the said executors have heretofore qualified and entered upon the discharge of their duties." Without explanation, this statement might be construed to mean that the executors had qualified and entered upon their duties in South Carolina. From the context this would seem to be the proper meaning, and a demurrer (which admits the facts as stated) might have failed to make the point intended and defeated the defense, as the proof showed that the plaintiffs never qualified and entered upon the discharge of their duties in the State of South Carolina.

The main question in the case is, whether the plaintiffs had legal capacity to sue as executors of Robert Patterson's will, upon which they had qualified and received letters testamentary in the State of Pennsylvania, but not in South Carolina. There is no doubt that the right to make a will gives the right to dispose of testator's personal property wherever it may be situated, but before there is a will at all, there must be conformity to the law of the domicile which, in most of the States, requires that the will must be in writing—free and voluntary—attested by a certain number of witnesses, and proved in an office established for that purpose. Although the power of disposal may be general, the sanction of these local laws, which are necessary to give it effect

as a will, does not extend beyond the limits of the State which enacts them.

So also as to the authority of executors, which is a very different matter from the probate of the will. Even after a will has been probated, it cannot execute itself, and some agency must be created to carry it out. The testator has the right to appoint his own executors, and while undoubtedly their general authority is derived from the will, they cannot enter fully upon the discharge of their trust until they have complied with certain statutory regulations upon the subject, such as taking the prescribed oath, in some of the States giving bond, and receiving letters testamentary ; and before these requirements are complied with, an executor named can exercise no power as such further than to pay funeral charges, and perhaps do such other acts as are necessary for the preservation of the estate. These requirements are necessarily local in their nature, and of course their operations are limited to the State which makes them, unless other States, from convenience or comity, adopt them as to wills executed in that State.

The rule and the reasons for it are clearly stated by Chief Justice Marshall, in the case of *Dixon's Executors* v. *Ramsay's Executors*, 3 *Cranch* 319, as follows: "The question in this case is, whether the executor of a person who dies in a foreign country, can maintain an action in this, by virtue of letters testamentary granted to him in his own country. It is contended that this case differs from that of an administrator, which was formerly decided in this court, because the administrator derives his power over the estate of his intestate from the grant of administration ; but an executor derives it from the will of his testator, which has invested him with his whole personal estate, wherever it may be. This distinction does certainly exist; but the consequences deduced from it do not seem to follow. If an executor derived from the will of his testator a power to maintain a suit and obtain a judgment for a debt due to his testator, it would seem reasonable that he should exercise that power, wherever the authority of the will was acknowledged ; but if he maintain the suit by virtue of his letters testamentary, he can only sue in courts to which the power of these letters extends.

It is not and cannot be denied, that he sues by virtue of his letters testamentary; and consequently in this particular he comes within the principle which was decided by this court in the case of an administrator. All rights to personal property are admitted to be regulated by the laws of the country in which the testator lived; but the suits for those rights must be governed by the laws of that country in which the tribunal is placed. No one can sue in the courts of any country, whatever his rights may be, unless in conformity with rules prescribed by the laws of that country," &c. See, also, *Murrell* v. *Dicky,* 1 *John. Ch.* 153; *Peterson* v. *Chemical Bank,* 32 *N. Y.* 40; *Noonan* v. *Bradley,* 9 *Wall.* 400, and *Reynolds' Executors* v. *Torrance,* 2 *Brev.* 49.

It is clear, then, both from principle and authority, that the plaintiffs had no legal capacity to sue in this State by virtue of their letters testamentary granted in the State of Pennsylvania, but it is insisted that the foreign appointment has been confirmed by the law of this State, and therefore they had the right to sue here. This might be possible. As said by Chief Justice Simpson, in the case of *Dial* v. *Gary,* 14 *S. C.* 579: "If the decedent has left a will, upon its being established under the *lex domicilii,* it will usually be confirmed under the jurisdiction where the property is found, and the title of the executor, as well as the disposition of the property therein appointed and directed, will be recognized here. But this confirmation must take place and be had in accordance with the laws of the *rei sitæ* before even an executor under such testament can intermeddle with the property," &c.

Is there any law in South Carolina which "confirms" the appointment of these executors, and makes them executors in this State? Section 1875 of the general statutes of 1882, relied upon by the plaintiffs and the Circuit judge, provides, that "If a will be regularly proved in any foreign court, an exemplification of such will may be admitted to probate in this State upon the exemplification and certificate of the judge of the Court of Probate, and the exemplification shall also be evidence of the devise of lands in this State when the title of lands comes in question," &c. The object of this provision manifestly was to avoid the

great inconvenience of producing the original will in this State for the purpose of being used in evidence, as appears by the original act of 1759 (4 *Stat.* 102), which recites, that "said probate or copy so proved and attested as aforesaid, shall be deemed and held to be as good and sufficient evidence in any court of law or equity in this Province as if said original will had been produced," &c. It may be conceded that under this law the will of Robert Patterson has been admitted to probate in Fairfield county of this State, but no mention whatever is made as to the qualification of the executors, and, as we understand it, the probate did not *ipso facto* involve their appointment or the confirmation of the foreign appointment in this State, so as to enable them to sue here.

The qualification of the executors is a matter entirely separate and distinct from the probate of the will and supplemental thereto. The oath required of executors in Pennsylvania is not identical with that required of them in this State. Section 1882 of the general statutes requires that every executor, at the time of proving the will, shall take the oath there prescribed, "that the writing contains the last will of the deceased so far as he knows or believes, and that he will well and truly execute the same, by paying first the debts and then the legacies contained in the said will, so far as his goods and chattels will thereunto extend and the law charge him; and that he will make a true and perfect inventory of all such goods and chattels," &c. These plaintiffs never took this oath or received letters testamentary in this State, and as was said in *Reynolds* v. *Torrance, supra:* "The opinion of the court is, that the authority derived from the probate of a will and letters testamentary in another of the United States, will not extend to this so as to empower the executor to meddle with the effects or credit of the deceased within this State. * * * An authenticated copy of a will and probate coming from another State, may be received in this, as sufficient evidence of such will and probate, but will not authorize the executor, acting by virtue of letters granted in another State, to meddle with property in this State, without first applying for and obtaining letters testamentary in this State, because the ordinaries [judges of Pro-

bate] within their several precincts, are bound to see to the due application of the assets of persons deceased and ought to have a correcting power over those entrusted with the administration of such assets, for the safety and interest of creditors and others within this State."

It is the judgment of this court that the judgment of the Circuit Court be reversed.