7 U.S. 319
 3 Cranch 319
 2 L.Ed. 453
 DIXON'S EXECUTORS
v.
RAMSAY'S EXECUTORS.
 February Term, 1806
 
 1
 ERROR to the circuit court of the district of Columbia, upon a judgment in favour of the defendants, upon a general demurrer to their plea, which (after oyer of the plaintiff's letters testamentary) stated, that the defendants' testator, at the time of making the promises, &c. and from thence, always, until his death, resided in the town of Alexandria, in the county of Alexandria, in the district of Columbia, and that the defendants have always resided in the same town, and that the plaintiffs have not obtained probat of the said letters testamentary, at any place within the district of Columbia, or the United States of America.
 
 
 2
 E. J. Lee, for the plaintiffs in error. The question is, whether the plaintiffs must take out letters testamentary in the district of Columbia, before they can maintain an action as executors.
 
 
 3
 There is nothing in the laws of Virginia, which requires that letters testamentary should be there taken out upon a foreign will, provided they have been taken out in the country where the testator lived and died. The 14th section of the act of Virginia, P. P. 162, relates only to the title to lands under a will.
 
 
 4
 If, then, there is nothing required by the laws of Virginia, the right, and the powers of the executors depend upon the rules of the civil law, and the law of that country of which the testator was a subject.
 
 
 5
 By the law of England, an executor may commence suit before the probat. 1 Com. Dig. 2 Bac. Ab. 413.
 
 
 6
 The very naming of an executor is a disposition to him, of all the testator's personal estate, for he comes in loco testatoris, and is entitled to the surplus, after payment of debts and legacies, 2 Bac. Ab. 423. He derives all his power, not, like an administrator, from the government of the country, but from the will of his testator.
 
 
 7
 The debts due to the estate, follow the person of the creditor, not that of the debtor, and the disposition of them is to be governed by the laws of that country of which the testator was a subject. 2 Bos. and Pul. 229, 230, Bruce v. Bruce. 3 Vez. jun. 200, Bempde v. Johnstone. Appendix to Cooper's Bankrupt law, 29, Babille's opinion. Vattel, b. 2, ch. 3, § 8, 109, 110, 111. 3 Dallas, 370, 377, (note.) 4 T. R. 184, 175, Hunter v. Potts.
 
 
 8
 The case of Fenwick v. Sears, ante, vol. 1. p. 259, was that of an administrator who derives his whole authority from the laws of the place; it therefore cannot decide the present case, which is that of an executor who derives his whole authority from the will of his testator. That case, too, was decided under the peculiar laws of Maryland, which differ from those of Virginia upon this subject. By the law of Maryland, 1798, ch. 101, § 4, no alien can be an executor or administrator.
 
 
 9
 But it is said, that the rights of creditors require that the executor should give security for the faithful administration of the estate. But this would be of no avail, if the executor, after giving security, should choose to return to England. For, according to the decision of the court of appeals of Virginia, in the case of Baylor's executors, a creditor cannot maintain an action against the sureties of an executor, until he has proved his debt by an action and judgment against the executor, and proved a devastavit also, by a suit. But he can never get a judgment against an executor, who is not found in the state; and, consequently, can never have judgment against the surety. But if an executor be absent, the creditor may, in chancery, attach the assets. A voluntary payment to an executor, without letters testamentary, in Virginia, is good. Why, then, should not the executor be permitted to sue?
 
 
 10
 If no purpose of justice is to be answered by refusing the right to sue; and, if it is not refused by the positive laws of Virginia, a strong argument may be drawn from the inconvenience of obliging an executor to procure letters testamentary in every state in the union, and, perhaps, for very trifling debts.
 
 
 11
 Swann, contra. The case of Fenwick v. Sears, has settled the question, as to a foreign administrator. In what does that differ from the case of a foreign executor? It is said, that the latter derives his authority from the will, which is an universal title. But the authority under the will is inchoate, until completed by the probat, and is limited to very few acts. It is certain, that an executor, before probat, cannot obtain a judgment. The ordinary in England, and the court in Virginia, may refuse an executor, who is under a disability; for example, an alien enemy; an infant under seventeen; an ideot, & c. Until, therefore, he is received, his capacity to act is not decided by the only competent tribunal.
 
 
 12
 In England, the ordinary cannot require security from an executor, 2 Bac. Ab. 376, 377; it can only be done by the court of chancery considering him as a trustee, when there is good ground to apprehend his wasting the estate. In Virginia, the interest of creditors, legatees and distributees, is attended to. Yet their interest might be destroyed, if the executor was permitted to receive money, or give an acquittance before he had given security. It is, therefore, questionable, whether an executor, in Virginia, can do any valid act, until he has qualified himself according to law.
 
 
 13
 It is also doubtful whether the assets can be attached, 3 Wilson, 297; for that would invert the order of administration. If they cannot, a foreign executor might, by his attorney, withdraw all the assets, and leave the creditors without remedy. A judgment-creditor here would have a preference. But if he sues in England upon a judgment of this country, his claim is reduced to a simple contract.
 
 
 14
 Probat in a peculiar jurisdiction, will not support a suit out of that jurisdiction. It would be strange, therefore, if a probat, even in the prerogative court, which is the present case, should extend across the Atlantic into a foreign country. 1 Ld. Ray. 562, Hilliard v. Cox. 2 Ld. Ray. 855, 856, Adams v. Savage.
 
 
 15
 The laws of Virginia have provided for the probat of all wills, foreign as well as domestic. P. P. 162, § 14 and 15.
 
 
 16
 C. Lee, in reply. By the civil law, the executor succeeds to all the moveables, and personal estate, and credits of his testator. His title is derived from the will, and his powers are as great as those of his testator were. 2 Bl. Com. 510.
 
 
 17
 The will is to be proved where the testator died, and the property is to be distributed according to the laws of that country.
 
 
 18
 The whole estate, wherever situated, is to be distributed according to one law. If a foreign executor should give bond in Virginia, by which law is he to be governed? Can there be two executors of the same will, governed by different laws, as to their administration? Can strangers interfere and get administration? It is true, the municipal laws may bind property in the country; but if no such laws, then the property is governed by the laws of the country where the testator had his domicil. Security ought not to be required here, if not required in England; and if taken in England, it ought not to be required here. (See Target's opinion upon the Dutchess of Kingston's will, in collectanea juridica.) [323]
 
 February 19.
 
 19
 MARSHALL, Ch. J. delivered the opinion of the court.
 
 
 20
 The question in this case is, whether the executor of a person who dies in a foreign country, can maintain an action in this, by virtue of letters testamentary, granted to him in his own country.
 
 
 21
 It is contended, that this case differs from that of an administrator, which was formerly decided in this court, because an administrator derives his power over the estate of his intestate, from the grant of the administration; but an executor derives it from the will of his testator, which has invested him with his whole personal estate, wherever it may be.
 
 
 22
 This distinction does certainly exist; but the consequences deduced from it, do not seem to follow. If an executor derived from the will of his testator, a power to maintain a suit, and obtain a judgment for a debt due to his testator, it would seem reasonable that he should exercise that power, wherever the authority of the will was acknowledged; but if he maintains the suit by virtue of his letters testamentary, he can only sue in courts to which the power of those letters extends. It is not, and cannot be denied, that he sues by virtue of his letters testamentary; and consequently, in this particular, he comes within the principle which was decided by the court, in the case of an administrator.
 
 
 23
 All rights to personal property are admitted to be regulated by the laws of the country in which the testator lived; but the suits for those rights must be governed by the laws of that country in which the tribunal is placed. No man can sue in the courts of any country, whatever his rights may be, unless in conformity with the rules prescribed by the laws of that country.
 
 
 24
 The court can perceive the inconvenience which may often result from this principle, but it is an inconvenience for which no remedy is within the reach of this tribunal.
 
 
 25
 Judgment affirmed.