BOARD OF COUNCILMEN OF CITY OF FRANKFORT et al. v. DEPOSIT BANK OF FRANKFORT et al.

(Circuit Court of Appeals, Sixth Circuit. August 1, 1903.)

No. 1,172.

1. APPEAL—JURISDICTION—CIRCUIT COURT OF APPEALS.

An order of the Circuit Court, made on an application for leave to file a bill of review for the purpose of setting aside a decree in favor of a bank, which quashed the service of notice of the application on the ground that the bank had become defunct as a corporation, but which also denied leave to file the bill on the merits, although for the same reason, did not relate wholly to matters of jurisdiction, and an appeal therefrom lies to the Circuit Court of Appeals.

2. SAME—MATTERS REVIEWABLE.

Where, after an application for leave to file a bill of review had been denied, the court considered and denied on the merits a second application to file an amended bill which was tendered, such action was in effect an opening of the first order, and an appeal from the later order brings up the entire question of the right to file the bill on the merits.

3. CORPORATIONS—EFFECT OF REPEAL OF CHARTER—RIGHTS PRESERVED BY KENTUCKY STATUTES.

Ky. St. 1894, § 1987, relating to the chartering of corporations by the Legislature, and which provides that, "whilst privileges and franchises so granted may be changed or repealed, no amendment shall impair other rights previously vested," is broad and general in its language, and preserves against impairment the vested rights of all persons, whether of the corporation and its members or of other persons against it; and a corporation whose charter has been repealed still exists for the purpose of being sued on obligations previously incurred, or of being brought into court by notice in proceedings previously instituted.

4. BILL OF REVIEW—APPLICATION FOR LEAVE TO FILE—REVIEW ON APPEAL.

Leave given by the Supreme Court, after its affirmance of a decree of the Circuit Court, to apply to the latter court for leave to file a bill of review, merely lifts the bar of its own decree, and leaves the application to be determined by the Circuit Court on its merits, subject to the right of either party to have its decision reviewed on appeal by the court having jurisdiction.

¶ 1. Orders, decrees and judgments reviewable in Circuit Court of Appeals, see note to Salmon v. Mills, 13 C. C. A. 374.

**5.** SAME—GROUNDS IN FEDERAL COURT—OVERRULING OF FORMER DECISIONS BY STATE COURTS.

A decree of the Circuit Court of the United States, based on an estoppel created by a judgment of a state court between the parties, and which has been affirmed by the Supreme Court, will not be reversed on a bill of review because the judgment creating the estoppel is subsequently reversed by the highest court of the state on appeal, where, when rendered, it was in accordance with the law of the state as declared by such court, which afterwards overruled its former decisions.

Appeal from the Circuit Court of the United States for the Eastern District of Kentucky.

For opinion below, see 120 Fed. 165.

W. H. & Ira Julian, for appellants.

Frank Chinn, for appellees.

Before SEVERENS and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This is an appeal, prosecuted in behalf of the city of Frankfort and the state board of valuation and assessment of Kentucky, from an order made by the Circuit Court of the United States for the Eastern District of that state (120 Fed. 165), refusing leave to file a bill of review proposed by the appellants for the purpose of reconsidering a decree made by the said Circuit Court on June 25, 1898, whereby the appellants were enjoined from proceeding under a law passed by the Legislature of Kentucky November 11, 1892 (Laws 1892, p. 277, c. 103), to value and levy a tax upon the franchise of the above-named appellee, the Deposit Bank of Frankfort, for the years 1895–98, and subsequent years, until the expiration of its charter, which decree was rested upon the ground that the above-mentioned law was an impairment of a contract between the state and the bank, which stipulated for a different and lesser rate of taxation than that contemplated by the law complained of. That decree was affirmed by the Supreme Court of the United States on May 15, 1899. In January, 1902, the defendants in that suit, the present appellants, moved the Supreme Court for leave to file a bill of review, upon a petition setting forth that the said decree against them was founded solely upon an estoppel arising from a former judgment of the Fayette Circuit court, one of the state courts of Kentucky having general jurisdiction, in a suit between the same parties brought against the bank to recover the taxes of a former year, in which it was determined that the said law of November 11, 1892, was void for the reason above stated, and that the taxes for which the suit was brought were not recoverable; and it was further stated in said petition that after the final determination of the cause, which had been pending in the United States Circuit Court and Supreme Court, the defendants in the cause in the state circuit court removed it by appeal to the Court of Appeals of the state of Kentucky, wherein the decree of the lower court was reversed upon the ground that the lower court erroneously held the said law of 1892 invalid, and the cause was remanded, and that thereupon such proceedings were had in the lower court that the plaintiffs recovered judgment. It does not appear that the bill of review which the petitioners proposed to file was exhibited to the Supreme Court,

and we infer that none such was there shown. Notice of the motion was served upon Frank Chinn, as the attorney, and upon Buford Hendrick, as president, of the bank. They appeared and moved to quash the return of service of the notice upon affidavits made by them that the charter of the bank was repealed by an act of the Legislature of the state passed March 22, 1900 (Laws 1900, p. 88, c. 28), whereby, as they insisted, the bank ceased to exist, and that all relationship between them and the bank was completely ended, so that service upon them was nugatory. Under a stipulation that there should result no waiver of their motion, they filed a response in which they set forth the act repealing the charter of the bank and other matters not now necessary to be repeated. The Supreme Court thereupon made the following order:

"On consideration of the motion for leave to file a bill of review herein, and of the arguments of counsel thereupon had, as well in support of as against the same, it is now here ordered by the court that permission be, and the same is hereby, granted the appellants to apply to the Circuit Court of the United States for the Eastern District of Kentucky for leave to file such bill as counsel may be advised."

This order having been certified to the Circuit Court, the petitioners applied to that court for leave to file their bill of review, in which they recited the proceedings in the original suit, the reversal by the Kentucky Court of Appeals of the judgment of the Fayette circuit court which, as they allege, was held by the United States Circuit Court to constitute an estoppel against the contention of the defendants in said former suit; and they thereupon prayed that, upon consideration of the removal of said estoppel by the judgment of the Kentucky Court of Appeals, the court would review and vacate its former judgment and enter a decree in favor of the defendants. Service of notice was made as before on the persons supposed to represent the bank as its president and attorney. They appeared and made the same objection to the service of notice, and made the same representation in regard to the repeal of the bank's charter by the Legislature on March 22, 1900. The Circuit Court, having filed an opinion stating its reasons, sustained the objection to the service of notice, quashed the return of service, and overruled the motion for leave to file the bill of review. Thereupon the petitioners filed an amended bill of review and renewed their motion for leave. The amendment made by the new bill consisted of allegations of certain matters of fact designed to show that the bank was not extinguished by the act of March 22, 1900, but that it was reorganized on April 28, 1900, under a law passed in 1856, and had since continued its operations at its former place of business. The petitioners filed affidavits tending to show that the new bank was not a reorganization of the old, but was a new, corporation, and they renewed their motion and their objection to allowing the bill to be filed. Whereupon the court entered an order which, after reciting the tender of the amended bill, the motion to quash service of notice, and the objection to allowing the bill to be filed, continued as follows:

"And said offer to file said amended bill of review being heard, upon said amended bill and the exhibits referred to therein, and upon the said affidavits, objections, and motions to quash, and the court being sufficiently advised, delivered an opinion herein, and it is ordered that said motion to quash and

objections to the filing of said amended bill of review be sustained, and the said offer to file an amended bill of review be refused. And it is further adjudged that the said respondents recover of the petitioners their costs herein expended."

The petitioners, having assigned errors, first, in the order quashing the service of notice, and, second, in refusing to allow the amended bill to be filed, appealed to this court. The appellees moved to dismiss the appeal upon the ground that the order appealed from was one which involved the jurisdiction of the Circuit Court and should have been taken to the Supreme Court. This motion was, by order, reserved until the hearing, and must now first be disposed of. As will have been seen, the order complained of not only quashed the service of notice, but also finally denied permission to file the bill. It is true it may be said that a similar reason to that on which the motion to quash was granted was relied on as an objection to the filing of the bill, namely, that the bank was a defunct corporation, which had neither capacity to have representatives nor to be pursued in a legal proceeding. But the order extended beyond the mere quashing of the service; and, in the face of the issue as to whether the bank still existed, it finally denied the application and ordered costs against the petitioners. We think that, in this condition of the case, there being a question of jurisdiction and also one of the merits, it was competent to bring the case to this court, if the petitioners were so advised.

It is objected that, as this appeal purports to be taken from the order made on the tender of the amended bill, and not from that made on the bill first tendered, the appeal is nugatory; that the order first made was the essential judgment, and that the matter of leave became res judicata, so that the second order did not disturb it. But it is evident that it was not so dealt with in the court below. The court treated the second application as a continuance of the first, and did not at all consider the first order as foreclosing the inquiry. What the court did was in effect to open the first order and hear the original application upon the amended bill. This objection to the appeal, as one taken from the order finally made, is not tenable.

The court below, upon a survey of the Kentucky statutes bearing upon the subject, reached the conclusion that by the act of March 22, 1900, the bank's charter was immediately repealed, and the corporation completely extinguished, and that there was no statute of Kentucky which continued its existence for the purpose of enforcing its liabilities previously incurred. Section 1 of the act of March 22, 1900, with the preamble, reads as follows:

"Whereas, by virtue of a recent decision of the Supreme Court of the United States, all banks of this state, both state and national, are now required to pay state and local taxes in Kentucky, except the Bank of Kentucky, the Farmers' Bank of Kentucky, and the Deposit Bank of Frankfort, which three last-named banks, by virtue of said decision, are now claiming exemption from all state and local taxes, except as provided in the Hewitt law, during their corporate existence; therefore be it enacted by the General Assembly of the commonwealth of Kentucky:

"Section 1. That an act, entitled 'An act to establish the Bank of Kentucky,' approved February sixteenth, eighteen hundred and thirty-four, and all amendments and extensions thereof, also an act, entitled 'An act to incorporate the Farmers' Bank of Kentucky,' approved February sixteenth,

eighteen hundred and fifty, and all amendments and extensions thereof, also an act, entitled 'An act to incorporate the Deposit Bank of Frankfort,' approved March third, eighteen hundred and sixty-three, and all amendments and extensions thereof, be, and the same are hereby repealed: provided, that if said banks, or either of them, on or before May first, nineteen hundred, file in Secretary of State's office their or its written consent to pay taxes under state and local levies of nineteen hundred and subsequent years, as provided in the Constitution and revenue statutes of this state, the bank or banks thus agreeing shall be excepted from the operation of this act." Laws 1900, p. 88, c. 28.

The bank did not file its consent, but organized under the act of 1856, as before stated. Counsel are at variance as to whether this act was intended to destroy the corporation immediately or to allow it to live until the 1st day of May, whereupon, if it had not complied with the condition, it should then cease to exist. We do not think it necessary to pass upon this question, nor upon the question whether there was a reorganization of the bank. The learned judge in the court below, in his examination of the statutes of Kentucky to find whether the existence of the bank was continued for the enforcement of its liabilities, referred, first, to section 2 of the act of February 14, 1856, which reads as follows:

"That where any corporation shall expire or be dissolved, or its corporate rights and privileges shall cease by reason of a repeal of its charter or otherwise, and no different provision is made by law, all its works and property and all debts payable to it, shall be subject to the payment of debts owing by it, and then to distribution among the members according to their respective interests; and such corporation may sue and be sued as before, for the purpose of settlement and distribution as aforesaid." 1 Laws 1855–56, p. 15, c. 148.

And he said:

"It is conceded that if section 2 of this act is still the law, then the defendant bank's existence has been preserved thereby for the purposes of the bill of review sought to be filed, because its charter was granted after the act."

He then proceeds to show that it was carried into the General Statutes of Kentucky of 1888, and became section 9 of chapter 68. He then points out that this section was omitted in the revision known as the "Kentucky Statutes of 1894," and that this omission, being from a chapter relating to the general subject which was revised at that time, shows that it was intended to be dropped; and he cites Kentucky decisions that such was the effect of such an omission in the revision of that year. The reason for this omission from the context in which it had stood, the judge suggests, was probably "because it was thought its subject-matter was covered by a provision of the act providing for the creation and regulation of private corporations enacted as part of the same revision."

We quite agree that upon the omission of a provision so important to the winding up of the affairs of defunct corporations we should expect to find elsewhere some provision which would govern the subject. In section 1987 of the same revision it is declared "that whilst privileges and franchises so granted may be changed or repealed, no amendment shall impair other rights previously vested," which provision is still in force. The court below was of opinion that this re-

ferred only to "the rights of the corporation and persons interested therein, not the rights of persons who have claims against the corporation." To this conclusion we do not agree. The language is broad and general, and we must think was intended to guard against the impairment of vested rights of all persons, whether of the corporations and its members, or of others, against it. Such, evidently, was the view of Mr. Justice Harlan in delivering the opinion of the Supreme Court in Covington v. Kentucky, 173 U. S. 234, 19 Sup. Ct. 383, 43 L. Ed. 679. Other statutes of Kentucky are referred to by counsel for the appellant as tending to show the solicitude of the Legislature in preserving vested rights upon the repeal or alteration of the charters of corporations, but we are content to rest our decision upon the one above referred to.

We therefore conclude that the court erred in holding that the notice did not bring the corporation before the court, and by this we mean, of course, the corporation which was party to the original suit. Having thus decided the preliminary question, we are in some doubt, in view of the somewhat anomalous position of the case, as to our further duty; that is to say, whether we should remand the case, with direction to the lower court to entertain the application and proceed to determine it upon its merits, or should ourselves consider the merits of the application. From the terms of the order of the Supreme Court, we must suppose that it was intended merely to lift the bar of its own decree and leave to the Circuit Court full authority to inquire and determine whether leave to file the bill ought to be granted. But we cannot suppose that it was intended that its determination should be final, and, undoubtedly, the permission thus given by the Supreme Court would not have precluded that court from reviewing the action of the Circuit Court, if its appellate jurisdiction had not been transferred to the Circuit Court of Appeals. For the Supreme Court did not have before it a proposed bill, and could not, therefore, determine the fitness of the bill which the petitioner might be advised to file, or the propriety of granting leave to file it. It would seem, therefore, that this court should have and exercise the same power as the Supreme Court would have had but for the transfer of its appellate jurisdiction to this court, or as we should have had if the final decree in the original case had been made by this court, and we had granted the like permission to apply to the lower court as the Supreme Court has granted. The Circuit Court has made a final order denying the application, and upon grounds which extend to its merits, as its opinion and order clearly show. We think the whole matter is before us, and that we should not simply decide a part of it and remand the case, to be, perhaps, brought here again upon another appeal.

We have held that the court below was in error in holding that the bank was extinguished by the repeal of its charter to the extent that it could not be served with process to bring it before the court to respond to the application for leave to file the bill, and it is a necessary consequence, if not an identical proposition, that it was competent to be a party to the proceedings. We must therefore hold that the Circuit Court gave an insufficient reason for refusing and dismissing the application. But we think that upon other grounds its order was

right. The proposition is to obtain the review and reversal of the former decree of the Circuit Court of the United States, affirmed by the Supreme Court, upon the ground that the judgment of the Fayette circuit court, upon which the United States court relied as an estoppel and made the basis of its decree, has since that time been carried to the Court of Appeals of Kentucky and been there reversed. No other ground for the bill of review is suggested, and the bill brings forward no other. Some question is made by the appellee whether, upon an inspection of the record in the original case, the estoppel by judgment was in fact the only basis of the decree. We think there can be no doubt that it was the controlling reason for it.

But is the ground assigned a sufficient reason why the original decree should be now reversed? The course of decision in the courts of Kentucky upon the question of the validity of the act of the Legislature of November 11, 1892, which was held void by the judgment of the Fayette circuit court above referred to, illustrates the consequences which would ensue if the fact that, since the judgment of the United States court became final, the judgment of the state court upon which it rested has since been reversed, should be accepted as a valid reason for reversing the judgment of the United States Court. The judgment of the Fayette circuit court was itself rested upon a former decision of the Kentucky Court of Appeals, which held the act of November 11, 1892, void as an impairment of the state's contract with the banks by a bare majority. After the decree of the United States court in question, the membership of the Kentucky Court of Appeals was changed, and, the question being again brought up, that court overruled its former decision by a bare majority, and, on the Fayette circuit judgment being brought up, it was reversed. We do not think it can be admitted that the final judgments of the courts of one jurisdiction can be thus made dependent upon the changing views of the courts of another. In the present case the ultimate and controlling fact relied upon is that the Kentucky Court of Appeals has swept away the foundation on which the former decree of the United States court was decided; for it was the inevitable result of the new law of the state, as declared by its Court of Appeals, that the Fayette circuit court judgment should be reversed. Suppose the United States Court should reverse its decree, and the state court should again change its views and revert to its former opinion; shall the United States Court restore its decree? The principles upon which the finality of judgments rests preclude such consequences. Even in the same jurisdiction a judgment which has become final and was rightly decided as the law then stood will not be reversed upon a bill of review upon the ground that the law has been changed by later decisions. To hold otherwise would leave the judgments and decrees of the courts on very unstable foundations, and dependent, not upon their own rectitude, but upon the vicissitudes of shifting opinions in regard to the governing law. Tilghman v. Werk (C. C.) 39 Fed. 680 (Jackson, Circuit Judge); 3 Encl. of Plead. & Prac. 581, notes.

In Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359, the Circuit Court had decided a case upon its own interpretation of a statute of Missouri, and afterwards the Supreme Court of the state

rendered a contrary decision in a case against the same defendants at the suit of a different plaintiff raising the same question.    But the Supreme Court of the United States, upon an appeal from the judgment of the Circuit Court, held it was not bound by the decision of the state court, and affirmed the ruling of the Circuit Court.    Now the correctness of the judgment of the lower court was open to the correction of the Supreme Court, but it refused to make any, and affirmed the judgment.    Suppose that, instead of an appeal to the Supreme Court of the United States, an attempt had afterwards been made to review the judgment upon the ground that the law of Missouri had been declared by its Supreme Court to be the contrary of that on which the decree had been rested.    No one can doubt that it would have been fruitless. Yet such an application would have stood in one respect on better ground than the present, for there the statute had never received a construction by the Supreme Court of the state.    We do not lose sight of the fact that there was an actual reversal of the judgment of the Fayette circuit court; but, as we have said, that was the necessary consequence of the change in the law upon which it rested.    Suppose, again, that in the present case the courts of the United States had founded their judgment directly upon some statute of the state, holding it to be a valid law.    The sanction of such a law would be of equal force at least with the estoppel upon which it did found it.    Would the decree be reopened and reversed upon a showing that the statute had been since then held invalid by the highest court of the state? We do not think so.    And yet such later decision would as completely annihilate the foundation of the decree as did the reversal of the judgment of the Fayette court.    We are not required to determine which of the two conclusions of the Kentucky Court of Appeals was right, and we therefore pass over that subject.    It was undoubtedly competent for that court to change its opinion if it saw good reasons for doing so, and no other tribunal is privileged, without necessity, to challenge the sufficiency of its reasons.    We have here only to determine whether in point of law its later decision reversing the judgment of the Fayette circuit court gives ground for reopening and vacating a final judgment of the courts of the United States founded upon it, and our conclusion is that it does not.

The order of the Circuit Court is affirmed.