COURTNEY v. PRADT et al.

(Circuit Court of Appeals, Sixth Circuit. January 25, 1908.)

No. 1,772.

1. APPEAL AND ERROR—MODE OF REVIEW—NATURE OF SUIT.

The difference between causes of action at law and in equity is matter of substance and not of form, and the fact that a suit based upon a legal right of action is brought in equity in a state court, for the purpose of obtaining an attachment under a state statute, does not make it an equitable cause after its removal into a federal court, and the judgment therein is reviewable on error and not by appeal.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error, 10–14, 17.]

2. ATTACHMENT—FOREIGN ATTACHMENT—JURISDICTION.

Civ. Code Prac. Ky. § 194, which gives a plaintiff the right to an attachment at or after the commencement of an action for the recovery of money against a nonresident defendant, does not create a new right of action, and one who would not otherwise be subject to suit in the courts of the state, if personally present or personally served with process in the state, is not made so subject by such statute.

[Ed. Note.—Federal courts following state practice as to attachment, see notes to O'Connell v. Reed, 5 C. C. A. 606; Nederland Life Ins. Co. v. Hall, 27 C. C. A. 393.]

3. EXECUTORS AND ADMINISTRATORS—SUIT AGAINST FOREIGN EXECUTOR—JURISDICTION.

It is the general rule that, in the absence of any statute so providing, an executor or administrator cannot be sued in his representative character on an indebtedness of his testator or intestate, either at law or in equity, in the courts of any state or country other than that in which he received his appointment, and such is the rule in Kentucky, subject to the exception, that a foreign executor or administrator may be there sued where he has removed to and settled in the state.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 2344.]

Appeal from the Circuit Court of the United States for the District of Kentucky.

A. P. Humphrey and W. B. Dixon, for plaintiff in error.
H. C. Gillis and Neal Brown, for defendants in error.

Before LURTON and RICHARDS, Circuit Judges, and KNAPPEN, District Judge.

KNAPPEN, District Judge. The plaintiff in error, a citizen of Kentucky, brought suit in the circuit court for Powell county, Ky., by attachment, under section 194 of the Kentucky Code of Practice, which gives the plaintiff the right, at or after the commencement of an action, to an attachment against the property of the defendant, including garnishees, as security for the satisfaction of judgment in an action for the recovery of money against a nonresident defendant. The defendants are all nonresidents of Kentucky. The defendant Louis A. Pradt is executor, and the other defendants legatees and beneficiaries, under the will of Merritt B. Atwater, who died a citizen of and domiciled within the state of Wisconsin, by whose courts the

160 F.—36

will has been admitted to probate and letters testamentary issued to the executor named; the estate not being closed.

The cause of action is upon an alleged indebtedness from the testator and William C. Atwater, as copartners, to the plaintiff. The will has not been proven in Kentucky, nor has any administration, ancillary or otherwise, been had therein. No service, actual or constructive, was had upon and.no jurisdiction obtained over any of the defendants, unless such jurisdiction was obtained over the defendant Louis A. Pradt, executor. As to him, constructive service was attempted to be had by garnishing the Atwater & Allen Land & Lumber Company, a Wisconsin corporation, on account of an alleged indebtedness from said company to said executor, by way of a dividend declared since the testator's death upon stock in said company held by him, and since his death by his executor, as such. By reason of diverse citizenship of the parties the suit was removed to the United States Circuit Court. The defendant Pradt, executor, moved to dismiss the suit for lack of jurisdiction in the Kentucky courts to maintain suit against him upon the cause of action mentioned, also for lack of jurisdiction over the garnishee defendant, and for various irregularities in the attachment proceedings. The suit was dismissed.

To review this judgment the plaintiff, because of uncertainty whether the action is to be treated as one at law or in equity, has taken both an appeal and a writ of error. The uncertainty arises from the fact that under. the Kentucky procedure the plaintiff is required to file a petition in equity where attachment is sought against nonresident defendants, and this suit was thus, in the state court, in equity. The difference between causes of action at law and in equity is matter of substance, and not of form. The suit being upon a legal right of action, the fact that by the state procedure the remedy by attachment is given in equity does not make the cause an equitable one in the federal courts. Highland Boy Gold Min. Co. v. Strickley, 116 Fed. 852, 54 C. C. A. 186; Files v. Brown, 124 Fed. 133, 59 C. C. A. 403; Board of Councilmen v. Deposit Bank, 124 Fed. 18, 59 C. C. A. 538. The appeal will be dismissed, and the writ of error retained. Hurst v. Hollingsworth, 94 U. S. 111, 24 L. Ed. 31.

The question which first claims attention is whether the plaintiff has a right of action in the courts of Kentucky upon the claim in suit against the defendant, as a foreign executor, the defendant personally being likewise a nonresident of the state. For unless the defendant, as such foreign executor, could have been sued in Kentucky for the cause of action in question, had he been within the jurisdiction of the court and personally subject to process, this suit cannot be maintained. Attachment suits, generally speaking, do not attempt to create legal rights. They merely provide remedies for the enforcement of existing rights of action. As expressed in C., R. I. & P. Ry. Co. v. Sturm, 174 U. S., at page 715, 19 Sup. Ct., at page 799 (43 L. Ed. 1144):

"The essential service of foreign attachment Laws is to reach and arrest the payment of what is due and might be paid to a nonresident to the defeat of his creditors."

There is nothing in the language of the statute here involved which indicates an intention to create a new legal right as against a foreign executor. The only provision which is pertinent here is the following:

"The plaintiff may, at or after the commencement of an action, have an attachment against the property of the defendant, including garnishees, as is provided in section 227, as a security for the satisfaction of such judgment as may be recovered—1. In an action for the recovery of money against (1) a defendant, who is a foreign corporation or a nonresident of the state."

This provision is found under the title "Provisional Remedies." The remedy is given as well after as at the time of the commencement of action. The cases of C., R. I. & P. Ry. Co. v. Sturm, supra, Harris v. Balk, 198 U. S. 215, 25 Sup. Ct. 625, 49 L. Ed. 1023, and Pittsburg, etc., Ry. Co. v. Bartels, 108 Ky. 216, 56 S. W. 152, furnish no authority for the proposition that one who would not be subject to suit in the courts of a state if personally present, or personally served with process therein, is made so subject by a provision for attachment of the kind here in question. Each of the cases referred to involved the effectiveness of a judgment against a garnishee defendant under foreign attachment proceedings. The garnishee defendant was held garnishable in the foreign jurisdiction because he was otherwise suable there by his creditor. The right of the plaintiff in the attachment suit to sue his foreign debtor in the courts of the plaintiff's residence was expressly recognized; and there is nothing in either of the cases cited which lends color to the proposition that a defendant, not otherwise suable, could be subjected to suit by attachment merely because such process was authorized "at or after the commencement of an action." Nor is there anything to such effect in the cases of Peterson v. Poignard. 6 B. Mon. (Ky.) 570, or in Hefferman v. Forward, Id. 567. In each of these cases the right to suit existed independently of the provision for attachment. The fact that in several states, where an administrator or executor is by statute subject to suit, process of attachment is provided for is not material to the question presented here.

Coming back, then, to the original question of the right of the plaintiff to sue the defendant as a foreign executor in the courts of Kentucky, we find the general rule well established by the decisions of the courts, both state and federal, that an executor or administrator cannot be sued in his representative character unless he is made liable by statute, either at law or in equity, in the courts of any state or country other than that in which he has received his appointment. Among the numerous authorities declaring this doctrine are Story on Conflict of Laws, § 513; 1 Williams on Executors (7th Am. Ed.), page 428 and following; Dixon's Executors v. Ramsay's Executors, 3 Cranch, 319, 2 L. Ed. 453; Vaughan v. Northup, 15 Pet. 1, 10 L. Ed. 639; Noonan v. Braley, 9 Wall. 394, 17 L. Ed. 278; Johnson v. Powers, 139 U. S. 156, 11 Sup. Ct. 525, 35 L. Ed. 112; Hopper v. Hopper, 125 N. Y. 400, 26 N. E. 457, 12 L. R. A. 237; Mellus v. Thompson, 1 Cliff. 125, Fed. Cas. No. 9,405; Security Ins. Co. v. Taylor, 2 Biss. 446, Fed. Cas. No. 12,607.

In Story on Conflict of Laws, supra, it is said:

"It has hence become a general doctrine of the common law, recognized both in England and America, that no suit can be brought or maintained by any executor or administrator, or against any executor or administrator, in his official capacity, in the courts of any other country except that from which he derives his authority to act in virtue of the probate and letters testamentary or the letters of administration there granted to him. * * * If a creditor wishes a suit to be brought in any foreign country, in order to reach the effects of a deceased testator or intestate situated therein, it will be necessary that letters of administration should be there taken out in due form, according to the local law, before the suit can be maintained; for the executor or administrator appointed in another country is not suable there, and has no positive right to or authority over those assets, neither is he responsible therefor."

In Dixon's Executors v. Ramsay's Executors, supra, Chief Justice Marshall held that an executor could not maintain a suit in the District of Columbia upon letters testamentary, granted in a foreign country, saying:

"It is not and cannot be denied that he sues by virtue of his letters testamentary; and consequently, in this particular, he comes within the principle which was decided by the court in the case of an administrator."

In Vaughan v. Northup, supra, Justice Story held, citing Dixon's Executors v. Ramsay's Executors, supra, that an administrator appointed by the courts of one state is not liable to be sued, in the District of Columbia, in his official character, for assets lawfully received by him in that district, by virtue of his original letters.

In Noonan v. Braley, supra (at page 400 of 9 Wall. [17 L. Ed. 278]), Justice Field, in deciding that an administrator appointed in one state cannot, by virtue of such appointment, maintain an action in another state, in the absence of a statute of the latter state giving effect to that appointment, to enforce the obligation to his intestate said:

"Upon this point the law is well settled. All the cases on the subject are in one way. In the absence of any statute giving effect to the foreign appointment all the authorities deny any efficacy to the appointment outside of the territorial jurisdiction of the state within which it was granted. * * * The same doctrine is as applicable to the case of executors as to that of administrators; the right to sue in both instances depending upon the letters."

In Mellus v. Thompson, supra, which was a suit against a foreign executor, Judge (later Mr. Justice) Clifford, after a careful review of the authorities, said (page 134 of 1 Cliff. [Fed. Cas. No. 9,405]):

"Nothing is better settled than the rule that a person claiming under a will proved in one state cannot intermeddle with or sue for the effects of a testator in another state, unless the will be first proved in that other state, or unless he be permitted to do so by some law of that state authorizing such proceeding. He cannot sue for the personal estate of the testator out of the jurisdiction of the power by which the letters of administration were granted, and upon the same principle, and for the same reason, he cannot be sued or compelled to defend a suit in any jurisdiction to which his authority as executor does not extend."

In Security Ins. Co. v. Taylor, supra (which was an action against an executor), Judge Blodgett said (page 448 of 2 Biss. [Fed. Cas. No. 12,607]):

"The mere fact that one of the executors came within the jurisdiction of the court upon other business does not make him amenable to the process of

this court in his representative capacity; his official mantle falls when he leaves the jurisdiction in which he was appointed. If persons having claims against the estate \* \* \* wish to pursue their remedy here, they must either take out letters of administration against the estate in this jurisdiction, or procure the executors to probate the will within this state, before the courts of this state, either state or federal, can obtain jurisdiction in personam of the executors or of the property of the decedent."

Turning to the decisions of the courts of Kentucky, we find the same rule there established as in the cases cited above, with this exception—that in that state, as in some others, a suit against a foreign administrator or executor is permitted when such executor has removed to, and settled within, the state.

In Baker v. Smith, 3 Metc. 264, the Court of Appeals of Kentucky said:

"An administrator or executor who is appointed and who qualifies in another state, and there receives assets into his hands, may be sued in the tribunals in this state by the person or persons entitled to such assets if he shall have removed to and settled in this state. Such seems to be the well-settled doctrine. Manion's Adm'r v. Titsworth, 18 B. Mon. (Ky.) 597, and cases there cited. But the right to sue a foreign administrator has never been extended further. \* \* \* The rule is thus stated by Judge Story: 'If a creditor wishes a suit to be brought in any foreign country, in order to reach the effects of a deceased testator or intestate situated therein, it will be necessary that letters of administration should be there taken out in due form, according to the local law, before the suit can be maintained; for the executor or administrator appointed in another country is not suable there, and has no positive right to, or authority over, those assets, neither is he responsible therefor.' "

It is urged that Baker v. Smith is in conflict with the earlier Kentucky decisions. Reference to those earlier decisions, however, shows that they recognize no different rule than stated in Baker v. Smith. Thus, Peterson v. Poignard, 6 B. Mon. 570, and Hefferman v. Forward, Id. 567, were suits brought against the heirs at law (there having been no administration), under a statutory authority which gave to any creditor the right to file a bill for the settlement of the estate.

In Davis v. Connelly's Executor, 4 B. Mon. (Ky.) 136, it was simply held that, where a testator had been sued in the courts of another state, and the executors appointed in Kentucky had voluntarily appeared and asked leave to defend the suit after their testator's death, a judgment so obtained against the executors was enforceable in Kentucky.

In Atchison's Heirs v. Lindsey, 6 B. Mon. (Ky.) 86, 43 Am. Dec. 153, the intestate was a citizen of Kentucky, and there domiciled at the time of his death. Administration was had in Kentucky, and another administrator, a resident and citizen of Kentucky, was appointed over property in South Carolina. It was held that such foreign administrator, so residing and found in Kentucky, was responsible there to the distributees, for any surplus in his hands after the payment of the debts claimed and allowed in the state where the administration was granted. The decision was based upon the proposition that the law of the domicile of one dying intestate governs the distribution of assets wherever they be, and that the administrator was

personally liable to suit upon the proposition that he was a citizen and resident of Kentucky, there having assets in his hands.

In Manion's Adm'rs v. Titsworth, 18 B. Mon. (Ky.) 582, 597 (cited in Baker v. Smith), it was said:

"It is the well-settled doctrine in this state that an administrator or executor, who is appointed or who qualifies in another state, and there receives assets into his hands, may be sued, in the tribunals of this state, by the person or persons entitled to such assets, if he shall have removed to, and, settled in this state. Dorsey's Executor v. Dorsey's Adm'r, 5 J. J. Marsh. (Ky.) 280, 22 Am. Dec. 33; Atchison's Heirs v. Lindsey, etc., 6 B. Mon. (Ky.) 86, 43 Am. Dec. 153."

The decisions of the Court of Appeals of Kentucky since Baker v. Smith are not out of harmony with the rule there stated. Thus, in Keiningham v. Keiningham's Executors, 71 S. W. 497, 24 Ky. Law Rep. 1330, an executor appointed and qualified in another state, who had as guardian made a settlement with the foreign court of appointment by which a balance remained in his hands, was held liable to suit in the courts of Kentucky, by the legatee and ward, for the recovery of such balance devised by the will, upon the proposition that the executor had not carried out in good faith the spirit and intention of the testator's will, in performing the trust created thereby. While it does not affirmatively appear from the decision that the defendant was a resident of Kentucky at the time suit was brought, such appears inferentially to be the case from the fact that the executor's liability to suit in the courts of Kentucky was sustained by reference to the cases of Dorsey's Executor v. Dorsey's Adm'r, Atchison's Heirs v. Lindsey, and Manion's Adm'rs v. Titsworth, all of which were decided before Baker v. Smith.

But it is earnestly contended that even if it be conceded that a foreign administrator could not have been sued in Kentucky under the circumstances existing here, yet an executor is, nevertheless, liable to suit therein for an indebtedness to his testator; that a clear distinction exists in this regard between an executor and an administrator, in that the former derives title by virtue of the will to the whole estate wherever it may be at the instant of the testator's death, while the administrator derives his title solely from the government which appoints him, and then only to the personal estate within the territorial jurisdiction of the court making the appointment. It is urged that through an overlooking of this distinction, a confusion has been created in the authorities, for which it is suggested the statement in Story on Conflict of Laws, above quoted, is responsible.

It is true that a distinction does exist as between executors and administrators with respect to title to property, both real and personal, liability with reference to trusts, and relations in other regards towards the estates they represent; and such distinction has been repeatedly recognized by the courts. This distinction is referred to in 1 Williams on Executors (7th Am. Ed.), page 436 and following, the note to which contains many valuable citations. It was recognized, for example, in Lewis' Lessee v. McFarland, 9 Cranch, 151, 3 L. Ed. 687, where it was held, in an opinion by Chief Justice Marshall, that:

"It is not necessary that the executor of a will made in Virginia, devising to the executor land in Kentucky should take out letters testamentary in Kentucky to enable him to maintain an ejectment for the land in Kentucky."

But we are cited to no decisions which recognize any distinction, between foreign executors and foreign administrators, with respect to suability, in the absence of statute therefor, on account of debts owing from the decedent personally. It is true that the cases of Stacy v. Thrasher, 6 How. 44, 12 L. Ed. 337, and Hill v. Tucker, 13 How. 458, 14 L. Ed. 223, recognize the existence of a qualified privity between executors of a common testator acting in different states which is not recognized as between administrators so representing the estate of an intestate—in that it is held in the former case that a judgment obtained in Mississippi against an administrator appointed there is not even prima facie evidence against an administrator of the same decedent appointed in Louisiana, while the latter case, although distinctly holding that the privity between executors is not such as to make a judgment in one state against an executor there conclusive evidence against an executor "qualified in a different state from that in which the judgment was rendered," does hold that it is evidence for the purpose only of showing that the demand had been carried into judgment in another jurisdiction against one of the executors, and that the other executor was thus precluded from pleading prescription or the statute of limitations. But these decisions fall far short of recognizing the alleged distinction under consideration.

Dixon's Executors v. Ramsay's Executors, supra, and Moore v. Tanner's Adm'r, 5 T. B. Mon. (Ky.) 46, 27 Am. Dec. 35, are cited as basing the reason for the rule forbidding a foreign executor to sue for property in another jurisdiction (notwithstanding the difference between executors and administrators with respect to title to property and the source thereof), upon the proposition that the executor maintains suit on account of property in another jurisdiction only by virtue of his letters testamentary, and so has no right to sue in a foreign jurisdiction, although he has title to the personalty there, until he first complies with the conditions imposed upon him by the government of that jurisdiction; for the reason that no man can sue in the courts of any country, whatever his rights may be, unless in conformity with the rules prescribed by the laws of that country. It is argued that the reason for the rule does not exist, and that so the rule falls in the case of suits against executors.

It is by no means clear that the rule forbidding suits by foreign executors is based upon a different foundation than that which sustains the rule forbidding suits against such executors on account of the personal indebtedness of the testator. On the contrary, the Court of Appeals of New York, in Hopper v. Hopper, 125 N. Y., at page 403, 26 N. E., at page 457, 12 L. R. A. 237, states the same basis for both rules, drawing the distinction between contracts of an executor and contracts of an intestate thus:

"The foreign executor may make a contract here which our courts will compel him to perform because it is his contract; but where it is the testator's only, he cannot sue or be sued upon it, since the right or the liability is purely representative, and exists only by force of the official character, and so

cannot pass beyond the jurisdiction which gave it. Johnson v. Wallis, 112 N. Y. 230, 19 N. E. 653, 2 L. R. A. 828, 8 Am. St. Rep. 742. And thus it is not the residence of the executor out of the state which makes him a foreign executor, but the creation of his official character under and by force of a law foreign to our own."

It will also be noted that Judge Clifford, in Mellus v. Thompson, supra, based the foreign executor's exemption from suit upon the same ground as that which forbids his maintaining suit, saying further:

"That letters testamentary or of administration granted abroad, without new probate authority, give no right to sue or be sued is a principle almost universally acknowledged by courts of justice. It was so held in Carther v. Crosts, Godb. 33, decided in 1585, and since that period has been the received doctrine in most jurisdictions to the present time,"—citing authorities, both English and American.

But whatever may be said as to the foundation of the rule, which, in the absence of statute, forbids suit against a foreign executor, on an indebtedness of his testator, except in the event of his removal to the state, or his coming therein with assets of his testator, the rule is too well settled, and has been too repeatedly enforced, to now admit of questioning it. It is now not only the rule recognized generally, but in the state of Kentucky as well. It is certain that a foreign executor could not sue in Kentucky for a debt due his testator without complying with the statutory conditions. In Marrett v. Babb's Executor, 91 Ky. 88, 15 S. W. 4, it is held that qualification by an executor in another state does not authorize him to sue in the courts of Kentucky, but that by pursuing the statutory remedy he may sue for the debt of the deceased only. It would seem reasonable that the right to sue and the liability to suit should be correlative, and that an executor who is disqualified to sue for a debt due to his testator should not be liable to suit on a debt due from his testator. The recent decision of the Court of Appeals of Kentucky, in McClelland's Adm'r v. Troendle, 99 S. W. 329, 30 Ky. Law Rep. 611, recognizes this correlative nature. It is there held that where a foreign administrator cannot be sued in Kentucky, no suit can be maintained against him.

The case of Tunstall v. Pollard's Adm'r, 11 Leigh (Va.) 1, cited in support of the proposition that the right to sue and the liability to suit are not correlative, is not applicable to the facts here. That case was one in equity, by legatees, for an accounting against a foreign executor, who had come into the jurisdiction where the suit was instituted, bringing with him into that jurisdiction assets of the testator. The case cited distinctly recognizes the rule that a foreign executor is suable, by creditors, on account of the debts of the testator, only when such foreign executor comes into the jurisdiction bringing with him assets of the testator.

Unless section 428 and following, c. 3, tit. 10, of the Kentucky Code of Practice, which give a representative or creditor, or one claiming under the will of a deceased person, a right to bring an action in equity for the settlement of the estate, shall be held to apply to the estate of a nonresident testator, we are cited to no statute in Ken-

tucky providing for suit against a foreign executor for the recovery of an indebtedness of the testator, except sections 3878 and 3879 (Ky. St. 1903), which give a right of action in cases where the foreign executor, as a condition of his right of action for the debts due his testator, files his letters testamentary, and gives a bond conditioned to pay any debt due by the testator to any resident of the state to the extent assets shall come into his hands. Sections 3898 to 3900 provide for ancillary administration upon the Kentucky assets of deceased nonresidents, in the event of which administration such assets can be subjected to the claims of creditors. Neither of these statutes has been invoked, nor is the Code provision referred to here involved. The defendant executor was therefore not suable in Kentucky for the testator's debt. He has not removed to Kentucky, nor has he come, even temporarily, into the state.

The judgment of the circuit court, dismissing the suit, is affirmed.

NOTE.—The following is the opinion of Cochran, District Judge:

COCHRAN, District Judge. For convenience sake I will treat this suit as if Louis A. Pradt, executor of Merritt B. Atwater, deceased, were the sole defendant. The presence of the other defendants requires no different disposition of the cause from what would be made were he the sole defendant. The object of the suit is to subject an indebtedness of the Atwater & Allen Land & Lumber Company, a Wisconsin corporation, to the decedent, a citizen of Wisconsin at the time of his death, which has passed to the defendant as his executor, also a citizen thereof, to the payment of an indebtedness of said decedent to the plaintiff, a citizen of Kentucky. The corporation is not a defendant to the suit. Its indebtedness to the decedent is attempted to be reached by the service on it of an attachment, sued out against the property of the defendant, and summoning it to answer as a garnishee herein. Two attachments have been so sued out—one on January 14, 1905, when the petition was filed and a warning order, by which constructive service of defendant was sought to be had, was made, and the other on March 2, 1905, after another warning order had been made on February 25, 1905. The first warning order required the defendant to appear in state court, where the suit was begun, at its March term, 1905, and on the first day thereof to defend. It was defective in that it should have required him to answer within 30 days after the making of the order. To cure this defect the second order was made, and it was in proper form. Because the first attachment had been issued upon a defective warning order, the second attachment was sued out after the second warning order was made. Both attachments were executed on the corporation by delivering a copy thereof to J. M. Kennon, as its duly appointed and authorized agent upon whom process could be served in this state. The defendant had appeared specially for the purpose of objecting to the jurisdiction of the court, by said proceedings, to subject the indebtedness of the corporation to him as executor aforesaid, to the payment of the indebtedness of said decedent to plaintiff, and has moved the court to quash both of said attachments and the return thereon, because the court is without such jurisdiction.

Jurisdiction of the court to so subject the indebtedness of the corporation to the defendant cannot be based upon the ground that such indebtedness has any situs in this state. It has no such situs. It can only be based upon the idea that, at the time of the issuance and service of said attachments, the corporation was suable in this state by defendant on account of said indebtedness. And it must be conceded that if at that time it was so suable, then the court has jurisdiction to so subject said indebtedness, notwithstanding the defendant itself was not otherwise suable therein by the plaintiff. This was so held by the Supreme Court in the cases of Chicago, R. I. & P. R. Co. v Sturm, 174 U. S. 710, 19 Sup. Ct. 797, 43 L. Ed. 1144; Harris v. Balk, 198 U. S. 223, 25 Sup. Ct. 625, 49 L. Ed. 1023. In the Sturm Case an Iowa corporation was garnisheed in Iowa by a creditor of a nonresident creditor of the

corporation, and it was held that the judgment of the Iowa court, subjecting the indebtedness of the corporation to the nonresident creditor, to the payment of the latter's indebtedness to the plaintiff, was valid. It was so held because, at the time of the garnishment, the corporation was suable in Iowa by the nonresident creditor. In the Balk Case, Harris, a resident of North Carolina, was garnisheed in Maryland by Epstein, a resident of Maryland and a creditor of Balk, a resident of North Carolina and a creditor of Harris, and it was held that the judgment of the Maryland court, subjecting the indebtedness of Harris to Balk to the payment of Balk's indebtedness to Epstein, was valid. It was so held because at the time of the garnishment Harris, being temporarily in Maryland, was suable therein by Balk.

The question here then comes to this: Was the Atwater & Allen Land & Lumber Company, at the time it was garnisheed herein, suable in this state by the defendant? If it was, then under the authority of these two cases it must be held that this court has jurisdiction, nothing else being in the way, to subject the indebtedness of said corporation to defendant to the payment of decedent's indebtedness to plaintiff. Its suability in this state at that time depends entirely upon whether it was then doing business in this state. If it was, then it was suable. If it was not, it was not suable. Of course, I am speaking here of its suability apart from an entry of appearance by it in a suit by defendant against it.

As to the suability of a corporation in a jurisdiction other than that which created it, the question first arose whether it was suable at all therein—i. e., in any state of case—it being contended that it was not. That it might be suable therein was settled by the Supreme Court in the cases of Lafayette Ins. Co. v. French, 18 How. 404, 15 L. Ed. 451; B. & O. R. Co. v. Harris, 12 Wall. 65, 20 L. Ed. 354; Ex parte Schollenberger, 96 U. S. 369, 24 L. Ed. 853. In the case of St. Clair v. Cox, 106, 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222, the condition of its suability therein was determined by that court. That condition is, apart from its voluntary appearance, that it is then doing business in such jurisdiction. And that such is the condition of its suability has been either laid down or recognized in the following subsequent cases, to wit: Fitzgerald v. Fitzgerald, 137 U. S. 98, 11 Sup. Ct. 36, 34 L. Ed. 608; Goldey v. Morning News, 156 U. S. 518, 15 Sup. Ct. 559, 39 L. Ed. 517; Barrow v. Kane, 170 U. S. 100, 18 Sup. Ct. 526, 42 L. Ed. 964; Connecticut Mut. L. Ins. Co. v. Spratley, 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569; Mut. R. F. L. Ass'n v. Phelps, 190 U. S. 147, 23 Sup. Ct. 707, 47 L. Ed. 987; Conley v. Alkali Works, 190 U. S. 406, 23 Sup. Ct. 728, 47 L. Ed. 1113; Geer v. Same, 190 U. S. 428, 23 Sup. Ct. 807, 47 L. Ed. 1122; Penn. L. M. F. Ins. Co. v. Meyer, 197 U. S. 407, 25 Sup. Ct. 483, 49 L. Ed. 810; Remington v. Central P. R. Co., 198 U. S. 95, 25 Sup. Ct. 577, 49 L. Ed. 959; Peterson v. Chicago, R. I. & P. Ry. Co., 205 U. S. 364, 27 Sup. Ct. 513, 51 L. Ed. 841; Green v. Chicago, B. & Q. Ry. Co., 205 U. S. 530, 27 Sup. Ct. 595, 51 L. Ed. 916.

A state statute providing for service on an officer or agent of a foreign corporation will, in the absence of a contrary construction by the courts of that state, be construed as having application only to a corporation doing business in such state. St. Clair v. Cox, supra. But, even though the courts of such state have given a contrary construction thereof, the federal courts thereof will not follow such construction, and that, even in a suit removed from the state court to the federal court. Goldey v. Morning News, supra. In every suit, then, against a foreign corporation, it must be made to affirmatively appear therein, in some way, that such corporation is doing business in the state where the suit is brought, to give validity to any proceedings had therein. St. Clair v. Cox. This condition of suability of a foreign corporation exists as well where such corporation has theretofore done business in the state where the suit is brought, but has then ceased to do business therein, as where it never has done business therein. Conley v. Mathieson Alkali Works, supra; Geer v. Same, supra.

In speaking as to the condition of suability, I have not had reference to the maintenance of any particular suit. Of course, in addition to the foreign corporation doing business in the state where a suit is brought, in order to its maintenance, it is necessary that process shall have been served on a proper officer or agent of the corporation. Service on any officer or agent is not suf-

ficient, but it must be served on some officer or agent who may properly be deemed to represent the corporation in such matter. That such is the case is brought out in certain at least of the above decisions of the Supreme Court; but I do not deem it important to make this good, as the question is not material herein. In every suit, then, against a foreign corporation, the maintenance of a particular suit against it depends upon two things: One is whether it was, at the institution of the suit, doing business in the state where the suit is brought. The other is whether process has been served on an officer or agent who may properly be deemed to represent the corporation in the matter of process.

Coming, then, to the case in hand: Was the Atwater & Allen Land & Lumber Company suable in Kentucky at the time it was served with said attachments and summoned to answer as a garnishee, apart from an appearance on its part to a suit therein? This depends, as heretofore stated, on whether it was then doing business in this state. At the time the special appearance was made herein by the defendant, and he filed his motion to quash said attachments and the returns thereon, it did not affirmatively appear that said corporation was at that time doing business in this state. It was not stated in the return on said attachments. All that was stated therein was that they had been executed on said corporation by delivering a copy thereof to said Kennon, its duly appointed and authorized agent, upon whom process could be served in this state. Nor was it stated anywhere else in the record. On the contrary, from the allegations of the petition it would appear that it was not then doing business therein. It is alleged therein that said corporation was empowered to buy, sell, own, and hold real estate in this state; and, so far as the petition goes, this was all that it was empowered to do. It is further alleged that prior to August, 1901, it did buy and own real estate in this state, and that practically all of its assets consisted of said real estate. If this is true, then its capital stock had been invested therein, and was not represented by anything else. But this is not all that it alleged. The petition goes further, and alleges that during August, 1901, the corporation sold said real estate, and realized a large sum of money. If so, then the proceeds thereof represented its entire assets. It then sets forth that the indebtedness of the corporation to the defendant, sought to be subjected herein, was a dividend declared by the corporation out of the proceeds of said real estate. A corporation formed to buy and sell real estate, which has bought real estate with its capital stock, which has sold the real estate and converted it into money, and has then apportioned the proceeds amongst its stockholders with a view to paying the same over to them, can hardly be said to be doing business anywhere. Practically it has come to an end. It has no capital on which it can do business. If it is to do any further business, it must have fresh capital with which to do it.

Such, then, was the condition of things at the time of the issuance and service of the attachments, according to the allegations of the petition, and as appeared from the record when the entry of appearance and notice to quash was made. Accompanying the motion was an affidavit by defendant, from which it appears that he was not only a stockholder by virtue of his testator's stock in said corporation, but a director therein, and familiar with its business affairs; that the facts regarding said corporation were as alleged in the petition; that the entire proceeds of sale of land had been collected prior to January 1, 1905; that on February 15, 1905, a special meeting of the stockholders was called for February 21, 1905, to wind up the affairs of the corporation; and that on said date such meeting was held, at which a resolution was adopted to liquidate the corporation, and a final distribution dividend was declared of all its assets. According to this, then, the corporation was certainly not doing business in Kentucky at the time the second attachment was issued and served. It was further stated in said affidavit that said Kennon was not, at the time of the service of the attachment on him, an agent of the corporation, nor had he ever been authorized, or appointed, or designated to act as such agent for said corporation, by any lawful or valid action of the directors or stockholders of the corporation.

But whilst, as stated, it should have been made affirmatively to appear that the corporation was doing business in Kentucky, yet I would think, if,

notwithstanding the foregoing, that fact has been made to appear on the hearing of the motion to quash, it is sufficient to uphold the court's jurisdiction to proceed. On the hearing thereof the plaintiff produced and filed the affidavit of Clarence J. Allen, the secretary of the corporation. It is necessary, therefore, to consider the contents of this affidavit before finally disposing of the motion. Said affidavit states that he has examined the records of the meeting of the stockholders and directors of the corporation, of which he is the custodian, and finds no minute of any meeting looking towards a withdrawal by the corporation from the state of Kentucky, or canceling the authority of the agent who had been designated as agent, upon whom process might be served, that on April 27, 1904, said Kennon was duly appointed as such agent, and the evidence thereof was the certificate signed by him as secretary, and filed in the office of the Secretary of State, a duly certified copy of which was attached to the affidavit, and that there was still due the corporation from one C. B. Allen, a resident of Kentucky, a sum of money for rent of certain of its lands leased by it to said Allen. Said affidavit fails to make out that the corporation was doing business in Kentucky at the time of the issuance and service of the attachments. The adoption of a formal resolution of withdrawal from Kentucky was not essential to the corporation ceasing to do business in this state. It ceased so to do by the fact that it sold out what it had in the state. In the Mathieson Alkali Works Case it was held that the corporation ceased to do business in the state of New York by selling and conveying the plant which it had theretofore been operating. This was so held notwithstanding the sale and conveyance was in consideration of the capital stock of the purchasing corporation, which it continued thereafter to own and hold.

As to whether Kennon was the agent of the corporation duly authorized to be served with process may be a question. It all depends on whether the action of the board of directors was essential to that end, or the mere action of the secretary was sufficient. It would seem that his authority depended solely on the action of the secretary. I do not deem it necessary to decide this question; for if he had been duly authorized, that fact did not affect the question as to whether the corporation was doing business in the state. Notwithstanding that fact, still it was not doing business therein. And in order to its suability, it was essential that it be doing so. That it had a duly authorized agent in the state simply made it possible, if it did business in the state, for process to be served on its duly authorized agent for that purpose, in a suit against it, so that jurisdiction of it could be acquired.

Then as to Allen being indebted to it for rent, that fact did not make it that the corporation was doing business in the state at the time in question, any more than the fact that the foreign corporation in the Mathieson Alkali Works Case acquired on the sale and conveyance of its plant the stock of the purchasing corporation, a New York corporation, and thereafter continued to hold it, make it that said corporation continued to do business in that state. It must be held, then, at the time of the issuance and service of the attachments herein, the garnishee was not doing business in Kentucky. Certainly such was the case when the second attachment was issued and served. Theretofore the corporation had gone into liquidation. It is probable that the first attachment was void because issued on a void warning order, and therefore not at or after the commencement of the action. Proceedings in constructive service must be strictly pursued. The only order the clerk had power to make was to warn the defendant to answer within 30 days after the making of the order. The order made was to appear at the next March term, 1905, of the court, and defend on the first day. It does not say anything about answering, save inferentially. He is warned to do two things— to appear, and that, at the March term, without saying when, and to defend on the first day. Possibly a true construction thereof was to answer on the first day of the said term, and it is true that this time was longer than 30 days. But still it was not the order he was empowered to make. However this may be, I think it is still clear that the corporation was not doing business in this state when the first attachment was issued and served.

This being so the corporation was not suable in this state when either attachment was issued and served. And not being suable, it was not garnish-

able. The latter seems to follow necessarily from the former. It was because the garnishee was suable by the defendant in the jurisdiction where the garnishment process was sued out that it was held in the Sturm and Balk Cases that he was also garnishable therein. The principle of those cases is thus stated by Mr. Justice Peckham in the latter case: "The plaintiff in such proceeding in the foreign state is able to sue out the attachment and attach the debt due from the garnishee to his [the garnishee's] creditor, because of the fact that the plaintiff is really in such proceeding a representative of the creditor of the garnishee; and, therefore, if such creditor himself had the right to commence suit to recover the debt in the foreign state, his representative has the same right, as representing him, and may garnish or attach the debt, provided the municipal law of the state where the attachment was sued out permits it."

But it is said that a foreign corporation, though it may not be suable in a certain jurisdiction because not doing business therein, yet if it enters its appearance to a suit therein without raising the question of jurisdiction, the suit is thereafter maintainable against it, and that in this case the garnishee, before any question of jurisdiction was raised, filed its answer as such without raising the question, and therefore it was not open to the defendant thereafter to raise it. Both propositions are true, but the conclusion does not follow therefrom. Though the garnishee had the right to waive the question of jurisdiction so far as it was concerned, it had no right to waive it so far as defendant was concerned. A garnishee has no power to confer jurisdiction on a court, so far as the defendant is concerned, to subject its indebtedness to him to the payment of his indebtedness to another. A number of authorities are cited as to the right of a garnishee to waive defective service, but they have no application here. The garnishee owes the defendant a duty, and that duty is to give the defendant an opportunity to defend the action against him. This was recognized in the Balk Case, Mr. Justice Peckham there said: "It is recognized as the duty of the garnishee to give notice to his own creditor, if he would protect himself, so that the creditor may have the opportunity to defend himself against the claim of the person taking out the attachment." Amongst the defenses that a defendant has the right to assert in the suit against him is that the court has no jurisdiction of the suit, and a garnishee has no right to take this defense from his creditor, when sued in a foreign jurisdiction, any more than any other defense.

Something is said in the brief as to the defendant having entered his appearance generally. I cannot make this out. He has made four separate and distinct motions—more than there was any necessity for—and he has urged every possible ground in support of them. But as to all of them he entered his appearance specially to raise the question of jurisdiction, and the basis of all his motions is that the court is without jurisdiction to proceed against him.

I am therefore constrained to sustain the motion to quash the attachments and returns thereon, and to dismiss the suit.