Kirkland & Co. *v.* Lowe, Pattison & Co.

---

## J. B. KIRKLAND & CO. *v.* LOWE, PATTISON & CO.

1. CONFLICT OF LAWS: PARTIES TO ACTIONS REGULATED BY THE LEX FORI.—Questions, as to who are the proper parties to suits, relate rather to the form of the remedy than to the right and merit of the claim, and are therefore to be determined by the law of the forum. See Story Conflt. Laws, § 565.

2. SAME: FOREIGN ASSIGNMENTS: HOW FAR RECOGNIZED HERE.—Assignments made under the laws of a foreign or sister State, will be recognized by the courts of this State, so far as the right and interest to the thing assigned is concerned; but where the property assigned is incapable under our laws of being transferred, so as to vest the legal title in the assignee, a foreign assignment will be held by the courts of this State, not to pass such a title.

3. SAME: HOW SUITS ARE TO BE BROUGHT UPON OPEN ACCOUNTS ASSIGNED UNDER THE INSOLVENT LAW OF LOUISIANA.—By the laws of this State, the legal title

to an open account does not pass to an assignee; a suit cannot, therefore, be maintained, in his own name, in the common law courts of this State, by a syndic appointed under the Insolvent Laws of the State of Louisiana, to recover an open account belonging to the estate of his insolvent, either individually or as a member of a partnership firm.   In such a case, the legal title to the account still remains in the insolvent, and the suit must be brought in his name.   See *Orr* v. *Amory,* 11 Mass. R. 25; *Raymond* v. *Johnson,* 11 Johns. R. 488; *Blane* v. *Drummond,* 1 Brockenbrough, 62.

In error from the Circuit Court of Rankin county.   Hon. John Watts, judge.

This was an action by B. M. Lowe, W. H. Pattison, and Alexander Pattison, formerly partners under the firm, name, and style of Lowe, Pattison & Co., against J. B. Kirkland & Co., to recover the amount of an open account for goods and merchandise sold, and money lent by the plaintiffs to the defendants.   The defendants pleaded, 1st. A general denial of the allegations of the complaint; and 2d. That the plaintiffs at the commencement of the suit had no interest in the cause of action, and had no right to sue for and collect the same, or prosecute the suit.   Issue being joined on these pleas, the plaintiffs proved the items of the account sued on; and the defendants then offered in evidence a record from the Fourth District Court of New Orleans, Louisiana.   From this record it appeared that, in A. D. 1853, and before the commencement of this suit, William H. Pattison, one of the plaintiffs, filed his petition in said court against his creditors, seeking to become a voluntary bankrupt under the Insolvent Laws of Louisiana; that his insolvency arose both from his individual debts and his liabilities as a member of the firm of Lowe, Pattison & Co.; that with his petition he returned an inventory of his individual property, and also an inventory of the assets of the firm of Lowe, Pattison & Co., in which he claimed an undivided interest; and that among the assets of Lowe, Pattison & Co., so returned, was the identical claim here sued on.   It further appeared from the record, that such proceedings were had upon the petition, that afterward, and before this suit was commenced, the said W. H. Pattison was duly declared a bankrupt, and one Thomas N. Waul was appointed by the said court, syndic of his estate.

The defendants also offered in evidence the deposition of said Waul, from which it appeared that he had not authorized the institution and prosecution of this suit. Upon objection by the plaintiff, both the record and the deposition were excluded from the consideration of the jury, and the defendants excepted.

The plaintiffs had verdict and judgment, and the defendants sued out this writ of error.

*W. C. Harper* for plaintiffs in error.

The States, in the absence of a general bankrupt law passed by Congress, have a right to provide for cases of bankruptcy or insolvency, by passing "State" bankrupt or "State" insolvent laws, and these have been declared constitutional. 3 Story on Constitution, 14, 15, 252–256; *Ogden* v. *Saunders*, 12 Wheaton, 213, and *Sturges* v. *Crowninshield*, 4 Wheaton, 122; 2 Kent Com. 390. And an assignment of such bankrupt or insolvent, passes all his legal and equitable interest in all his property and choses in action. 2 Kent, 399, et seq. Story Confl. Laws, 336 to 357, as to the effect of such assignment extra-territorially; in which it is laid down that, at least as to personal property and choses in action, the entire legal right or ownership being surrendered, passes by operation of law to the assignee or syndic for the benefit of creditors. The Civil Code of Louisiana, adopted long anterior to this surrender, provides fully that the surrender, or "cessio bonorum," shall operate as a relinquishment of all right of the debtor, and vest the same in his syndic or assignee. Civil Code, p. 338, Art. 2166; Bullard & Curry, Digest, 487 to 495. And the syndic must sue in his own name. Bullard & Curry, p. 493, sect. 30. And if a debtor be a merchant he must surrender his books. Sect. 6.

W. H. Pattison had not, at the institution of the suit, or at the trial, any interest in the cause of action; and the testimony of Thomas N. Waul, his syndic, which was excluded by the Circuit Court, proves that he, as syndic, never authorized its institution or prosecution. (See deposition of Waul, in latter part of Circuit Court record.) This proposition, that the plaintiffs on the record must have the legal title or ownership of the cause of action, does not admit of argument or controversy. It is too plain to admit of

argument, even if it had never been decided. But the very point involved here, to wit, that the suit must be in the names of the assignee of the bankrupt, and the remaining parties of the firm, has been expressly decided by this court. See *Sims* v. *Ross, Strong & Co.*, 8 S. & M. 557; *Wilson* v. *McElroy*, 2 Id. 241. And so the law is stated in Story on Partnership, p. 484; and it will be noticed that the surrender in the present case, as shown by the record marked Exhibit A, by W. H. Pattison, purports to be an assignment or surrender of the entire assets of Lowe, Pattison & Co., for the separate interest of the creditors of Lowe, Pattison & Co., and that the first item under the head of "Open Accounts," on p. 7, is the very debt sued on in this cause. It is respectfully submitted that the judgment should be reversed.

*D. Shelton,* for defendants in error.

The only question in this case is, whether, after the insolvent proceedings of W. H. Pattison, this action could be sustained as brought, or whether it was necessary that Waul, the syndic, should have been made a plaintiff in the action.

We are assured by counsel for the plaintiffs in error, that in the State of Louisiana, he would have been a necessary party plaintiff. I shall not here controvert that doctrine. I shall do so hereafter.

My position is, that whatever would be the rule in Louisiana, he could not have been made a plaintiff to this action at law, on an open account in Mississippi.

It is not a question about his right of property. It is not a question about his interest in the demand sued on, or the proceeds thereof when collected: these, our courts, when called on by him, will certainly protect; but they will protect them according to the modes of proceeding in our own courts, and not according to the modes of proceeding recognized in Louisiana. Unless, therefore, there is vested in the syndic such a legal title to the account sued on as would enable him, jointly with the surviving partners, to maintain an action at law according to our modes of proceeding, he could not have been a party plaintiff in this action, whatever might be the rule under the modes of proceeding in Louisiana. Now this suit is brought upon an open account. By the laws of Mississippi, the

assignee of an open account cannot maintain an action at law in his own name. It is impossible for a foreign legislature to pass a law that will change this rule of proceeding here. Suppose, for example, that the legislature of Louisiana were to pass a law making accounts assignable by indorsement, and declaring that the assignee took a legal title to the money, and might sue in his own name, such assignee in Louisiana could not maintain an action in this State against one of our citizens in a court of law, because such a law, so far as it affects the form of the remedy, would not be extra-territorial in its operation.

Suppose that the laws of Louisiana declared that an equitable title to slaves should be a legal title, and the equitable owner might sue at law and recover the same. Surely no action at law could be sustained in the State of Mississippi upon such equitable title, though it did originate in Louisiana. The plaintiff would have to seek his recovery according to the forms of proceeding in the courts of Mississippi. I might illustrate the argument by many other such instances. In all such cases, our courts would undoubtedly protect the rights of the parties, but that protection would be given according to the forms of proceeding in our own courts, without reference to the remedies that would be given for the same rights in Louisiana.

To apply these principles. Suppose it to be true, that by the law of Louisiana, the syndic had such legal title as enabled him to sue at law in the courts of that State, on the account sued on, jointly with the other partners. Still, so far as it affects the mode of proceeding, that law is confined to the courts of Louisiana. It does not change the mode of proceeding in the courts of Mississippi. And since, under our modes of proceeding, an assignee of an open account cannot maintain an action in his own name, the action here must be brought in the name of the original creditors.

I need not cite authorities to show that the forms of the remedies, and the order of judicial proceedings are to be according to the law of the place where the action is instituted; that is a familiar principle. But I will cite some authorities illustrating the application of that rule, and pertinent to the question of its application to the present case.

Story, in his Conflict of Laws, § 564, in considering this ques-

tion, divides his subject into different heads, one of which is, " In regard to persons who may sue." Discussing that question in § 565, he says : " Questions may arise where the party suing is not the original party to the debt or claim, but he takes a derivative title" by assignment. " Debts and choses in action are not, with the exception of negotiable promissory notes and bills of exchange, assignable. Hence, if any other debt or chose in action . . . is assigned, no action can be maintained thereon in a common law court by the assignee in his own name. The same rule has been applied to assignments of debts or choses in action made in foreign countries, although the assignee might be entitled to found an action thereon in such foreign country in his own name, in virtue of such assignment. For (it has been said) the inquiry in whose name a suit is to be brought, belongs not so much to the right and merit of the claim as to the form of the remedy. No distinction seems to have been made in England as to the right to sue, between the case of an assignee by the private voluntary act of the assignor, and an assignee by operation of law by an assignment *in invitum* under the Bankrupt Laws. Thus it has been held that a Scotch assignee of a bankrupt could not maintain a suit in his own name in England for a chose in action of the bankrupt, which was admitted to pass under the assignment."

*Wolff* v. *Oxholm*, 6 Maule & Selwyn, 92, was assumpsit on account for money lent, &c., brought by citizens of Denmark against a citizen of England, after the Denmark citizens had assigned the account to a trustee, and that assignee had, in Denmark, and under its laws, sued in his own name. Lord Ellenborough says, " The assignee could not sue in the courts of this country, in his own name ; the action must have been brought here in the names of the original creditors, even if they had assigned the debt for a valuable consideration ; and although the assignment gave the assignee a right to sue in his own name, in Denmark." p. 99.

*Bird* v. *Savage*, 1 John. R. 118, was an action of assumpsit on an account, by a firm consisting of three members, two of them citizens of England, one a citizen of New York. Before suit brought, the English members became bankrupts in England. A question was raised, whether, after the assignment in bankruptcy, the action could be maintained in the name of the partners ; and it was decided that the action was properly brought in their names.

Kent, Justice, dissented; but in his dissenting opinion he does not examine the question now under review, but discusses only the question whether, by the assignment in bankruptcy in England, the English assignees acquired a right to the effects of the bankrupt in the United States, and very properly holds that they do.

But in *Bird and others* v. *Carital*, 2 Johns. R. 342, the very question now under discussion came before the Supreme Court of New York, and was decided by Kent, Justice. That action was brought upon an account in the name of Bird and Savage, the English bankrupts, and Aspinwall, assignee of the New York member of the firm, who had become a bankrupt in New York. The defendants pleaded the bankruptcy and assignment in England, and insisted that the English assignees should have been made plaintiffs; and that the suit was improperly brought in the name of the English bankrupts. That plea was demurred to. Upon the demurrer, Kent, Justice, says, "This is more a question concerning form than substance, for there can be no doubt of the right of the assignees to collect the debts due the bankrupt, either by a suit directly in their own names, or as trustees using the name of the bankrupt." "But the mode of recovering the debts of the bankrupt will depend upon the forms of proceeding in the country, and in the forum in which the assignee institutes his suit." "At common law a chose in action is not assignable. It was not, therefore, in the power of the bankrupt to assign the premises stated in the declaration so as to enable the assignee to sue upon them in his own name; yet his assignment would have transferred as valid a title as that under the foreign commission. No instance has been shown in which the English courts of law have allowed the foreign assignee to prosecute in his own name. . . . . The plea is therefore clearly bad. The suit was properly brought in the names of the English bankrupts." pp. 344–5.

The two cases last cited, clearly define Justice Kent's opinion to be, that the foreign assignee takes the rights of the foreign bankrupt that may exist in this country, but that he must enforce those rights according to our modes of proceeding; that if, therefore, the suit is brought upon a chose in action, which, by our laws, is not assignable, the suit must be brought in the name of the bankrupt, and not of the assignee.

*Orr and others* v. *Amory*, 11 Mass. R. 25, was an action by as-

signees of a Pennsylvania bankrupt, against a citizen of Massachusetts, upon a chose in action, which was not assignable by the laws of Massachusetts. The court say: "It has been heretofore settled, that the assignees of bankrupts, duly appointed, under the laws of a foreign country, cannot maintain actions in their own names, in our courts, for demands due to such bankrupts. A chose in action, such as is the subject of the present action, is not assignable at the common law, nor by any statute provision recognized in this commonwealth, where the remedy is sought to be maintained." "The action is not maintained."

In *Raymond* v. *Johnson*, 11 Johns. R. 490, it was held, that a New Jersey assignee could not maintain the action in his own name upon an account, but that it was properly brought in the name of the New Jersey bankrupt.

Read the following case in the report; *Blane* v. *Drummond*, 1 Brockenbrough's R. 62. This case is precisely to the point, covers the whole ground, and is ably argued by Chief Justice Marshall. It was an action in the name of an English bankrupt, brought on a bond against a citizen of Virginia. By the laws of Virginia, bonds were not assignable. Judge Marshall decides but two points : 1. That the foreign assignees, could not have maintained the action. 2. That the action was properly brought by the foreign bankrupt. The leading principle of his decision is, that a debt which, by the laws of Virginia, is not assignable, cannot be assigned by the laws of another country, so as to enable the assignee to sue on it in the courts of Virginia. Every word in the able opinion is directly to the point under argument ; and I hope the court will, before deciding this case, read the whole opinion. See also Story's Confl. of Laws, §§ 358, 359 ; 6 Maule & Selwyn, 92.

The foregoing authorities are decisive of the question involved in this cause. But I am told that the case of *Simms* v. *Ross, Strong & Co.*, 8 S. & M. 557, is adverse to the foregoing view of this case. I think not: The whole ground of my argument is, that the laws of Louisiana cannot control the remedy in Mississippi. The principle of the foregoing decisions is, that one nation or State cannot by its laws change the forms of proceeding in another nation or State. Now, in the case of *Simms* v. *Ross, Strong & Co.*, the bankruptcy which was in Alabama, was under the United States Bankrupt Law,

and not under a State insolvent law; but the United States Bankrupt Law was the paramount law, not only of Alabama, but of Mississippi also. It conferred not only the rights of the parties, but it also controlled the remedy. When that law said, that the assignee should have a right of action for the recovery of all the effects of the bankrupt, it was paramount to our laws, and therefore gave the remedy. Not so, however with the insolvent laws of a sister State. These can confer rights, but they cannot control the remedies.

HANDY, J., delivered the opinion of the court.

The defendants in error, as partners, brought this action against the plaintiffs in error, to recover a sum of money due upon an open account.

It appears that prior to the institution of the suit, Pattison, one of the partners, under the insolvent laws of the State of Louisiana, where he resided, made a surrender of his property and effects for the benefit of his creditors, including the claim here sued on, in the proper court in that State, and that a syndic was there appointed, who, under the operation of the laws of that State, became an assignee of his property and effects, for the benefit of his creditors. These proceedings were taken in relation to his individual rights, and did not in terms embrace the firm of Lowe, Pattison & Co.

The question presented by the record is, whether, under such a state of facts, the suit could be maintained in the name of the firm of Lowe, Pattison, & Co., or whether the syndic of Pattison was not a necessary party, together with the other partners of the firm.

It is to be observed, that the alleged assignment to the syndic is in virtue of the laws of another State, which can have no force of themselves to pass legal titles to property in this State; and such assignment can only be valid and effectual here, to enable the assignee to sue in his own name, when they relate to rights or property which are assignable under our laws. The rule which applies to the question who shall be parties to the action, is established by the law of the forum, and is said to belong rather to the form of the remedy than to the right and merit of the claim. Story's Confl. Laws, § 565. The question in such cases is, what shall constitute a sufficient legal title to enable the party to sue in our courts; and if the thing assigned be not such as is assignable under our

laws, so as to transfer the legal title, upon clear principle the assignee cannot maintain an action upon it in his own name in a court of law. And this rule applies as well to assignments made in virtue of the laws of other States of this Union, as to those made under the laws of foreign States. *Orr* v. *Amory*, 11 Mass. 25 ; *Raymond* v. *Johnson*, 11 Johns. Rep. 488.

Hence it is clear that, as the account sued on here was not assignable under our laws, so as to enable the syndic to sue in his own name, the suit could not have been maintained in his name, either solely, if the cause of action had been the sole individual property of the insolvent, or jointly, with the copartners of the insolvent in this case.

It is also well settled upon principle and authority, that the suit could be maintained in the name of the insolvent, notwithstanding the appointment of the syndic. *Blane* v. *Drummond*, 1 Brockenbrough, 62 ; *Raymond* v. *Johnson*, 11 Johns. Rep.

The case of *Simms* v. *Ross*, 8 S. & M. 557, is relied upon in behalf of the plaintiffs in error, as settling the question that the syndic was a proper party to this action. That was a question arising under the Bankrupt Law of the United States, the operation of which extended to this State, and had the same effect upon the rights involved in it in this State as if it had been one of our own statutes. It is in this, manifestly different from a statute of one of the States, which can have no effect upon remedies and modes of judicial proceeding here, not recognized by our laws.

But it is said that Pattison had no interest in the cause of action when the suit was instituted, and therefore, that it could not be maintained. It is true that his interest passed to the syndic as trustee for his creditors. But so far as is cognizable by our laws, and for the purpose of maintaining the action, the legal title remained in him, subject to whatever claim the syndic might have against the other partners, in virtue of his interest in the debt.

The case of *Eckhardt* v. *Wilson*, 8 Term Rep. 140, was a case of bankruptcy in England, and under the laws there, in virtue of which the assignee succeeded to the legal title of the bankrupt, and was, therefore, held to be competent to sue with the other plaintiff. The same reason which gave the assignee the right to sue in his own name, also rendered the bankrupt incompetent to sue in his

own name.  The bankrupt could not maintain the suit, because all his interest, both legal and equitable, had passed to the assignee. But such is not the case here.  The equitable interest was in the syndic, but the legal title under our laws and modes of proceeding remained in the bankrupt: *Blane* v. *Drummond*, 1 Brock.; and we do not consider, that the case of *Simms* v. *Ross*, is in opposition to this rule, under the facts presented in this case.

Let the judgment be affirmed.