BARRIELLE v. BETTMAN.

(District Court, S. D. Ohio, W. D. October 3, 1912.)

No. 6,382.

1. EVIDENCE (§ 37*)—JUDICIAL NOTICE—HISTORICAL FACT—CIVIL LAW—FRENCH JURISPRUDENCE.

A court may take judicial notice of the historical fact that the civil law is the foundation of French jurisprudence, but not of its details; nor is it bound to know the extent of its adoption, or its modifications, if any, to meet the necessities and demands of modern civilization, or of changes in the form of government which have taken place in that country.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 52; Dec. Dig. § 37.*]

2. EVIDENCE (§ 81*)—FOREIGN LAW—PRESUMPTIONS.

Since French institutions are Latin, and not Anglo-Saxon, it will not be presumed that the English law is in force in France; the English common law being regarded as in force only in those states or countries settled by English colonists.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 101; Dec. Dig. § 81;* Common Law, Cent. Dig. §§ 14–16.]

3. EVIDENCE (§ 97*)—FOREIGN LAWS—PROOF.

Under the rule that laws of foreign countries must be pleaded and proved, the existence of a law of France authorizing heirs of a decedent's estate to sue to collect a claim was a fact which plaintiffs were required to allege and prove.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 97.*]

4. DESCENT AND DISTRIBUTION (§ 89*)—CLAIMS DUE ESTATE—FOREIGN ESTATES—RIGHT TO SUE—WHAT LAW GOVERNS.

In a suit to recover a claim due the estate of a deceased citizen of France from a citizen of Ohio, the law of Ohio governs the question of the right of the decedent's heirs to maintain the suit.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 346–350, 368–381; Dec. Dig. § 89.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. ABATEMENT AND REVIVAL (§ 72*)—DEATH—PERSONS ENTITLED TO REVIVE —HEIRS.

> Rev. St. Ohio 1908, § 5154, provides that on the death of a plaintiff the action may be revived in the name of his representative, to whom his right has passed. If his right has passed to his personal representative, the revivor shall be in his name; and if it has passed to his heirs or devisees, who could support the action if brought anew, the revivor may be in their names. *Held* that, in an action for the recovery of personal assets belonging to a decedent's estate, the real party in interest under the administration act is, and has always been, the decedent's administrator, and where a citizen of France died during the pendency of an action against a citizen of Ohio to recover the purchase price of certain goods, the action could be continued by his administrator only, and not by his heirs, and hence a recovery in the name of his heirs was ineffectual. *Held*, also, that the enactment of section 4993 did not make the heirs the real parties in interest, for the reason that before the adoption of the Code no right of action existed in the heirs of a decedent, either at law or in equity, for the recovery of personal assets belonging to a decedent's estate, and such being the case, the Code did not create such right of action in them.

> [Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. §§ 377–402, 412–416; Dec. Dig. § 72.*]

Action by H. Barrielle, Aîné, against Morris L. Bettman, surviving partner, etc. On motions of plaintiff and defendant for a new trial. Granted.

Oscar W. Kuhn and Eugene C. Pociey, both of Cincinnati, Ohio, for plaintiff.

Simeon M. Johnson, of Cincinnati, Ohio, for defendant.

SATER, District Judge. The question is: Shall a new trial be granted? The contracts for the glacé fruits mentioned in the pleadings were made in 1906, at Apt, in the republic of France. The goods were delivered at Marseilles to the defendant's agent and shipped to Cincinnati. The vendor, Barrielle, alleging himself to be a citizen of such republic, sued in this court to recover the purchase price of the goods, and subsequently died. Thereupon Paul Barrielle, Marie Beauchamp, Eugenie Beauchamp, and Marthe Barrielle, a minor, by Paul Beauchamp, her guardian, to obtain a revivor of such suit and their substitution as parties plaintiff, made an application which recites that they are the children and sole heirs at law of Barrielle, and residents and citizens of the republic of France, and that under the laws of that country the rights of Barrielle in the cause of action set forth in his petition passed immediately upon his death to them as such heirs at law. On the representations made, the cause was revived, and the substitution ordered; but the reasons for and against the same were not fully presented to the then presiding judge.

The defendant disclaims all liability on account of the goods purchased. He denies that the substituted plaintiffs are the children and sole heirs at law of Barrielle, that they, or any of them, in person or through a guardian, can rightfully prosecute the action, and, for want of information, that Barrielle was a citizen of France. By

way of counterclaim he asserts in each of his two causes of action set up in his cross-petition damages for $2,700 for breach of contract, on the ground that the goods (on account of hidden defects of slow development and therefore not sooner discernible) were, on arrival and examination at Cincinnati, found to be unsound and unfit for resale. The defendant at all times by proper action and averment insisted that only an administrator could revive or prosecute the action. When the case was called for trial, the court suggested delay until after the appointment and substitution of an administrator; but, plaintiffs' counsel not desiring so to do, the case was permitted to proceed, with the understanding on the part of both branches of this court, as well as of the plaintiffs and the defendant, that the question of parties would be re-examined on motion for a new trial, should one be filed. A verdict having been returned for defendant on the first cause of action, and against him on the second, both parties moved for a new trial.

[1, 2] Whether or not, under the laws of France, Barrielle's cause of action passed at his death to his sole heirs at law, and, with the right to prosecute this case, vested in them as his successors in interest, at what age minority ceases in France, by what procedure a guardian may be appointed for a minor, and what the powers of a guardian so appointed are, as regards the estate of his ward and of its ancestor, were material facts to be alleged and proved by a preponderance of the evidence. 5 Ency. Ev. 813. A court may take judicial notice of the historical fact that the civil law is the foundation of French jurisprudence, but not of its details. 5 Ency. Ev. 808, note. Nor is it bound to know the extent of its adoption, or its modifications, if any, to meet the necessities and demands of modern civilization or the changes in the form of government which have taken place in that country. Its institutions are Latin, and not Anglo-Saxon, and it will not be presumed that the English common law is in force in any state or country not settled by English colonists. Banca De Sonora v. Bankers' Mut. Casualty Co. (Iowa) 95 N. W. 232, 235; Davison v. Gibson, 56 Fed. 443, 444, 5 C. C. A. 543; Savage v. O'Neil, 44 N. Y. 298; Flato v. Mulhall, 72 Mo. 522.

[3] In England and America, at law and in equity, the rule has been consistently maintained that the courts of one country cannot take cognizance of the laws of another without plea and proof (Liverpool & Great Western Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 445, 9 Sup. Ct. 469, 32 L. Ed. 788; 5 Ency. Ev. 808), and the existence, therefore, of a French law, such as plaintiffs claim, was a matter of fact triable by the jury, and to be proved by competent evidence, like any other fact material to the case. Ingraham v. Hart, 11 Ohio, 255; Evans v. Reynolds, 32 Ohio St. 163. The plaintiffs did not plead or prove such law in any of the respects above mentioned, and it must therefore be presumed to be the same as that of Ohio, and the law of that state must govern (Cleveland v. Duryea, 1 Cin. Super. Ct. R. 324; 5 Ency. Ev. 813, 814; Flato v. Mulhall; Carpenter v. Grand Trunk Ry. Co., 72 Me. 388, 39

Am. Rep. 340), and the court must proceed accordingly (Liverpool & Great Western Steam Co. v. Phenix Ins. Co.) ; but under the state law an action to recover possession of assets belonging to a decedent's estate must be prosecuted by his administrator and cannot be maintained by his heirs (Davis v. Corwine, 25 Ohio St. 668; McBride v. Vance, 73 Ohio St. 258, 262, 76 N. E. 93; 112 Am. St. Rep. 723, 4 Ann. Cas. 191). There is, therefore, a fatal defect both in plaintiffs' pleadings and proof.

[4] Further consideration of this case might well end at this point, were its future disposition not dependent on the question as to the right of the plaintiffs, in any event, to maintain this action—a question which was held in abeyance until this time. On the hearing to revive and substitute, portions of the Code Napoléon, as indicated by the file papers, were cited. Stress was laid on the requirement of the Ohio Code that an action must be prosecuted in the name of the real party in interest (section 4993, R. S.), except as in such section provided; but slight emphasis was given by counsel to the administration act; the decisions under it, and the remedy afforded to foreign suitors situated as these plaintiffs are. In the determination of this question the French law may properly be considered; for, if the plaintiffs may maintain this action in their own names, it is on account of some right acquired by the foreign law which the courts of Ohio respect, as not in conflict with the settled policy of the state. A review of the methods of procedure in the settlement of decedents' estates in France and in Ohio is essential to a solution of the problem before us. In so far as deemed material, the French law is briefly as follows:

Under the Code Napoléon, the succession or inheritance is opened by the death of the ancestor. Section 718. No distinction is made between the real and personal property of a succession (section 732), both of which descend in one mass to the children and descendants of the deceased in equal portions (sections 731, 745). By fiction of law, the representatives of a decedent enter into the place, degree, and rights of the ancestor; i. e., the heirs step into the shoes of the deceased ancestor (section 739; Hunter's Roman Law [2d Ed. 1885] 744; Domat's Civil Law, § 2470; Blair v. Cisneros, 10 Tex. 34; Woerner, Am. Law Adm. § 203; Schouler, Ex'rs, § 6), and consequently on his death there passes to them all his property, rights, and actions, and all his debts and obligations, which debts and obligations the heirs are bound to satisfy, whether the assets are sufficient or not, each contributing a proportionate amount (sections 724, 870, 873; Hunter's Roman Law, 747). To relieve an heir of the consequences which may result from such responsibility, he need not accept the succession, but is given the privilege of renouncing it, in which event he is considered as never having been an heir, or of accepting simply under privilege of an inventory. Sections 775, 785, 774. He may have at least 40 days in which to accept or renounce, but married women are incapable of a succession without the authority of their husbands, or act of

law, and a succession falling to minors cannot be validly accepted, save in conformity with the previous authority of the family council, and then only under the benefit of inventory. Sections 461, 776, 778. The heir may for his own protection declare at the office of the civil court of first instance of the circle in which the succession is opened that he does not mean to assume the quality of an heir except under the privilege of an inventory, in which event an inventory of the succession property must be made. Sections 793, 794. The effect of the privilege of inventory gives the heir two advantages: (1) Of not being bound to payment of the debts of the succession, except the amount of the value of the goods collected by him, besides the power of discharging himself of the payment of the debts by abandoning all the goods of the succession to the creditors and legatees. (2) Of not confounding his personal property with that of the succession and of preserving towards it the right of claiming the payment of his own demands. Section 802. The heir so demanding an inventory is charged with the administration of the goods of the succession, and must render an account thereof to the creditors and legatees (section 803), and is relieved from responsibility for the ancestor's obligations beyond the amount received. Acceptance has a retroactive effect, and, when once made, the heir is considered as having succeeded as from the death of the ancestor. The terms "administration" and "administrator," as found in the statutes of those countries in which the common-law system has been adopted, do not occur in the civil law. Schouler, Ex'rs, § 6.

The settlement of a decedent's estate under the Ohio law is not made by his heirs or legal representatives, but by a personal representative, who, according to the definition of that term in Bouvier's Law Dictionary, and as will appear from a comparison of sections 6134 and 6135, R. S., is either his administrator or executor. In the administration act the distinction between heirs and administrators is clearly and repeatedly drawn. Neither so succeeds the decedent as to be individually liable for his debts. An administrator is a trustee, with special functions defined by statute, and is charged with the duty of winding up the estate and speedily determining the trust, that creditors may be paid and heirs enter into full enjoyment of their inheritance. He is appointed by, and, unlike an heir, is an officer of, the court. His possession of the decedent's property is taken in obedience to the court's order, is its possession, and cannot be disturbed by any other court. Byers v. McAuley, 149 U. S. 615, 13 Sup. Ct. 906, 37 L. Ed. 867; 2 Bl. Com. 496; Orlopp v. Schueller, 4 Ohio Cir. Ct. R. (N. S.) 611, 614; Sampsell v. Sampsell, 17 Ohio Cir. Ct. R. 455, 462; Swiggett v. White, 8 Bull. 22. He is required to take an oath of office, to give bond for the faithful administration of his trust, and to account to the court at stated intervals, to which he is responsible for his acts. Publicity attends his conduct. Administration under him is unitary. He has a fixed situs, and may thus be readily reached by heirs and creditors. On the appointment of an administrator, the personal estate of the deceased passes to and vests in him, not in the heir, and his

title as administrator relates back to the death of the intestate deceased (Sommers v. Boyd, 48 Ohio St. 648, 658, 29 N. E. 497), and is applied first to the payment of the decedent's debts, the heirs taking only the residue. Their interest is secondary, and is capable of conversion into unqualified ownership only through the process of administration. · McBride v. Vance, 73 Ohio St. 266, 76 N. E. 938, 112 Am. St. Rep. 723, 4 Ann. Cas. 191. Even the real estate which descends upon the heir, who takes it subject to a lien for the decedent's debts, which attaches immediately on his death (Straman v. Rechtine, 58 Ohio St. 443, 444, 51 N. E. 44), is provisionally assets in the administrator's hands, and it is his duty to subject it to the payment of the decedent's debts, whenever the personalty proves insufficient for that purpose (Favorite v. Booher, 17 Ohio St. 548, 558). The administrator alone can sue to recover personal property. Davis v. Corwine, 25 Ohio St. 668; McBride v. Vance, supra; Lewis v. Eutsler, 4 Ohio St. 354, 360. A debtor of the estate cannot be required to pay to the heir, but may require the appointment of an administrator to receive payment. McBride v. Vance, supra. Were he to make payment to the heir, to whom the title to the claim against him has not passed from the administrator in the course of distribution, and debts of the decedent be outstanding, he could be compelled to pay again to the administrator, unless such debts are barred by the statute of limitations. If he should pay a mortgage to the heirs, who had not acquired title thereto through an administrator, he could not obtain a valid cancellation of it. Section 4135. Where there is any personal property to distribute, or any debts owing to the decedent, there must in Ohio be an administration of the estate (section 5994, R. S.; Rockel, Complete Ohio Probate Prac. § 55), unless estates not exceeding in value $100 be exempted by section 6005, R. S. The same author laments the fact (section 56) that, if an estate be not more than sufficient to pay the widow's allowance, it must nevertheless be subjected to administration in the orderly manner prescribed by statute. The Supreme Court in the McBride Case, supra, speaking to this point, employs the following language:

"In Woerner's American Law of Administration (2d Ed.) § 199, it is said that the necessity of administration arises out of the common-law doctrine that the personal property of the decedent descends to the executor or administrator, and that this doctrine is recognized substantially in all the states except Louisiana, and, further: 'The direct consequence of this principle of the law is that without due course of administration the claims of creditors cannot be lawfully satisfied, and neither heirs nor legatees can obtain a legal title to their legacies or distributive shares, and that neither devisees nor heirs can hold the real estate to which they succeed free from the claims of creditors of the deceased, against whom limitation does not, in some states, run after the debtor's death, until there be lawful administration of his estate. Another consequence is that the payment of debts to the deceased can be coerced by no one but the lawfully appointed executor or administrator, even in equity, because there is no privity between the debtors and any person other than the legal representative. He stands as the representative of those interested in the devolution of the personalty of the deceased, including creditors of the estate, as well as legatees and distributees.' * * * Section 5994, Revised Statutes, provides that, upon the decease of any inhabitant of this state, letters testamentary, or letters of administration on the estate,

shall be granted by the probate court of the county in which the deceased was an inhabitant or resident at the time of his death; and when any person shall die intestate in any other state or country, leaving any estate to be administered within this state, administration thereof shall be granted by the probate court of any county in which there is an estate to be administered."

[5] Thus it appears that "administration" and "succession" are essentially different. The one means the dealing with a deceased person's property according to law; the other, the succeeding to it beneficially. Valuable collations of cases which accord with the Ohio rule, as well as of those which, under given circumstances, depart therefrom, are found in Buchanan v. Buchanan, 75 N. J. Eq. 274, 71 Atl. 745, 22 L. R. A. (N. S.) 454, and note, 138 Am. St. Rep. 563, 20 Ann. Cas. 91, and Woerner's American Law Adm'n, §§ 199–201.

Such, then, being the settled law of the state, the remedy to be pursued to collect personal assets therein due to a nonresident's estate must be that prescribed by the local law, and his heirs, whatever their rights may be, cannot maintain an action to recover the same on the ground that they are the real parties in interest, because they are not such. In Dixon v. Ramsay, 3 Cranch, 319, 2 L. Ed. 453, Mr. Chief Justice Marshall thus states the rule as to the remedy:

"All rights to personal property are admitted to be regulated by the laws of the country in which the testator lived; but the suits for those rights must be governed by the laws of that country in which the tribunal is placed. No man can sue in the courts of any country, whatever his rights may be, unless in conformity with the rules prescribed by the laws of that country."

See, also, Story on Conflict of Laws, § 556; Williams, Executors (3d Am. Ed., 1849) 1302; Harrison v. Baldwin, 5 Ohio Cir. Ct. R. 310; Heaton v. Eldridge & Higgins, 56 Ohio St. 87, 98, 46 N. E. 638, 36 L. R. A. 817, 60 Am. St. Rep. 737; Bouvier's Law Dict., Lex Fori; Boyer v. Knowlton Co., 85 Ohio St. 104, at page 113, 97 N. E. 137, at page 138. In the last named case it is said:

"We think rules of comity cannot be recognized to overthrow an express statute of our state. It prescribes a rule of conduct to govern our own citizens, and we do not think that residents of another state should be more favored, unless the statute so permits."

Closely in point is Embry v. Millar, 1 A. K. Marsh. 300, 10 Am. Dec. 732, which involved a contest over certain slaves brought to this country after the death of their former owner, who died in the Spanish dominions. It was said:

"The succession to his personal estate should no doubt be regulated by the laws of the country where Sims died; but to recover any part thereof which may have been in this country at that time, as the remedy must be governed by the laws here, there should most clearly, as was decided in the Supreme Court of the United States in the case of Fenwick v. Sears, 1 Cranch, 259 [2 L. Ed. 101], and in the case of Dixon v. Ramsay, 3 Cranch, 319 [2 L. Ed. 453], be administration obtained from the proper court in this country. The latter of these cases was brought by an executor in the District of Columbia, upon letters testamentary granted in a foreign country, and although the principle is there admitted that the succession to the testator's personal estate is to be governed by the law of the country where he died, yet upon the principle of the remedy being regulated by the laws of the place where the suit is brought, it was held that the action could not be maintained. As from the authorities in Cranch, therefore, it is proper, to enable the executor to recover the possession of the testator's estate in certain cases, although

he may have been domiciled abroad, to obtain probate of his will, where suit is brought. In giving an exposition to the act of this country, conferring jurisdiction in testamentary matters, we should, unless restrained by a different import, so interpret it as to enable the courts of this country to take the probate in those cases as well as when the testator may have resided here."

The contention that the plaintiffs, as Barrielle's sole heirs, may maintain this action under section 4993, R. S., as the real parties in interest, is unsound. All foreigners, sui juris, and not otherwise disabled by the laws of the place where the suit is brought, may maintain suits to vindicate their rights and redress their wrongs; but the rule which applies to the question, who shall be parties to the action, is established by the law of the forum, and is said to belong rather to the form of the remedy than to the right and merit of the claim. Story, Conflict of Laws, § 565; Bates, Pl. Pr. & Forms, 8; Kirkland v. Lowe, 33 Miss. 423, 69 Am. Dec. 355. Bates (page 15) in discussing the last-named section, cites Davis v. Corwine to the point that for the recovery or collection of intestate personalty the real party is the administrator. To the same effect are Childress v. Emory, 8 Wheat. 642, 667, 5 L. Ed. 705; Popp v. Cincinnati, H. & D. Ry. Co. (C. C.) 96 Fed. 465.

The real party in interest does not mean one who would be affected by a judgment, but relates only to a legal interest, or one which would have been recognized, either at law or in equity before the Code. Bates, p. 8. In Galpin v. Lamb, 29 Ohio St. 529, 536, it is said:

"The rules of the Code in respect to parties are substantially the same as those which prevailed in equity before the adoption of the Code. Where no right of action existed in a party, either at law or in equity, the Code does not create one."

The right to administer estates belonged originally to the king by prerogative as parens patriæ, subsequently to the lord of fee, and ultimately to the bishop or ordinary of the diocese, upon trust to distribute the residue after deducting the partes rationabiles for charitable or pious uses. On account of abuses which arose, there were enacted the statutes of Westminster II, of 31 Edward III, c. 2 (which is the original of administrators as they at present stand, 2 Bl. Com. 496), and of 22 and 23 Car. II, c. 10, to which statutes our present conception of the office of an administrator is due. Am. & Eng. Ency. Law (1st Ed.) 170, 171.

Section 5154, R. S., provides:

"Upon the death of the plaintiff, the action may be revived in the name of his representatives to whom his right has passed; if his right has passed to his personal representative, the revivor shall be in his name; and if it has passed to his heirs or devisees who could support the action if brought anew, the revivor may be in their names."

If the property involved had been real estate, the revivor would necessarily have been in the names of the heirs or devisees. Valley Ry. Co. v. Bohm, 29 Ohio St. 633; section 5155, R. S. As it was personalty, the right of action passed to the personal representative, and the revivor should have been in his name—a conclusion in which my Associate concurs.

The motions for a new trial are sustained,